No. 86-62

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

PEARL F. WAGNER,

        Plaintiff and Appellant,

   -vs-

GLASGOW LIVESTOCK SALES CO.,
a Montana corporation, and
TREASURE STATE BANK, a Montana
corporation,

        Defendants and Respondents.

_____

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Valley,
The Honorable B. W. Thomas, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        David L. Nielsen, Glasgow, Montana

    For Respondent:

        Matthew W. Knierim, Glasgow, Montana

_____

Submitted on Briefs: May 15, 1986

Decided: July 30, 1986

Filed: JUL 30 1986

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal from an order granting summary judgment. Pearl Wagner brought an action against the Glasgow Livestock Sales Company and Treasure State Bank to decide: (1) Whether the security agreement between Wagner and the Treasure State Bank created a valid security interest in the collateral described; (2) Whether an advance made on November 3, 1980 to Wagner's husband and their ranch was secured by the security agreement; and, (3) Whether Glasgow Livestock Sales Company was liable to Wagner for proceeds of the sale of her cattle which were paid directly to Treasure State Bank rather than to Wagner herself.

The District Court granted summary judgment to the respondents, Treasure State Bank and Glasgow Livestock Sales, Co. and we affirm.

The issue before us is whether the summary judgment should have been granted.

Early in February of 1980, Pearl and Richard Wagner entered into an agreement with Treasure State Bank in which all their farm equipment, livestock, products and proceeds thereof were listed as security for "the payment and performance of each and every debt, liability and obligation of every type and description" the Wagners owed or at any time thereafter would owe to Treasure State Bank. The provisions of this agreement will be cited as needed. At the time this agreement was entered the Wagners owed the bank $86,000.00.

On March 24, 1980, the Wagners both signed a promissory note in the amount of $120,000.00 which represented their

operating line of credit for that year. The language of this note indicated it was secured by a security agreement dated March 24, 1980. During the following period the bank made many advances on this line of credit and the Wagners deposited funds to be credited against this line of credit. Richard Wagner, individually, and for the ranch, signed an additional promissory note on November 3, 1980 in the amount of $170,000.00.

On January 12, 1981, Pearl Wagner wrote to the president of the Treasure State Bank informing him that she and Richard had separated in December of the preceding year. She emphasized that as of the date of her letter she would no longer be responsible for any debts Richard Wagner might incur. Pearl and Richard Wagner have since divorced.

Thereafter Pearl Wagner made a number of sales of cattle. The proceeds of three of these sales are the subject of this suit. In January of 1981 she sold cattle through the Glasgow Livestock Sales Company for the sum of $3,244.07. In March of 1981 she again sold cattle through Glasgow Livestock, this time for $120,515.78. In both instances the livestock company made the checks out to Pearl Wagner and Treasure State Bank. The second and larger check included Richard Wagner as payee. When she presented these checks Pearl was told that payment on them had been stopped. In each instance these sums were then directed from the livestock company to the bank, where they were credited against the balance of the March and December 1980 notes. The final cattle sale concerned three bulls Pearl Wagner bought from another rancher and consigned the same day to the livestock company for sale. After the bulls were sold, the livestock company paid the proceeds directly to the Treasure

- 3 -

State Bank. The bank applied the proceeds against the balance due on the two notes. Pearl Wagner brought this suit against Treasure State Bank and Glasgow Livestock Sales Company alleging that because she was not personally liable on the November 1980 note, and because the security agreement of February 24, 1980 did not cover the November note, the bank and livestock company are liable to her for the proceeds of those sales.

We are first asked to determine whether, under the facts of this case, summary judgment was proper. The law favors full litigation of all issues brought before a court. The narrow exception of summary judgment exists for reasons of judicial economy. Hence summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Cereck v. Albertson's, Inc. (Mont. 1981), 637 P.2d 509, 38 St.Rep. 1986. The burden of establishing the absence of any genuine issue of material fact falls upon the moving party. Once established in the record that no issue of fact exists, the burden shifts to the party opposing the motion to demonstrate such issues do exist. Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163. If the opposing party cannot display material fact issues to the court or that the law requires the issue to be determined against the moving party, summary judgment must be granted. Larry C. Iverson, Inc. v. Bouma (Mont. 1981), 639 P.2d 47, 38 St.Rep. 1911.

In the case before us, Wagner has failed to establish any differences concerning the material facts of the case. While the circumstances surrounding the making of the security agreement and the promissory notes, the crediting and debiting Wagner's line of credit, and the sales of cattle

- 4 -

and payment of proceeds from those sales may be factually complicated, Wagner has not produced evidence of any material issue concerning these facts. Merely conclusory or speculative statements asserting issues of fact are not sufficient to resist the motion. Kronen v. Richter (Mont. 1984), 683 P.2d 1315, 41 St.Rep. 1312. The party opposing the motion has an affirmative duty to respond by affidavits or sworn testimony with specific facts to show there is a genuine issue suitable for trial. Martin v. State of Montana (Mont. 1985), 698 P.2d 399, 42 St.Rep. 272.

Close examination of the record, including the affidavit of Pearl Wagner, convinces us that the trial court properly found that no issue of material fact existed. Wagner contends that she didn't intend at the time of signing the security agreement that it would cover any separate note signed by her husband only. It is true that summary judgment is usually inappropriate where intent of the parties is an important consideration. Twite v. First Bank (Mont. 1984), 692 P.2d 421, 41 St.Rep. 2518. However, in this case the security agreement as we explain below, was a valid agreement, not ambiguous, and clearly covering future indebtedness, whether joint or several, and clearly pledging Pearl Wagner's separate property (cattle with her brand) for the whole indebtedness. Therefore evidence of Pearl Wagner's subjective intent is not a material issue. The four corners of the security agreement clearly show the obligations and rights arising from the agreement.

The only other issue of fact raised by the record concerns the problem that the March 24, 1980 promissory note refers to a security agreement dated the same day. Pearl Wagner has not alleged the existence of any agreement signed

- 5 -

that day and admits she signed the February agreement which the bank contends secures that March note. The District Court found that the March 24 date for the referenced security agreement was a typing error. This finding was proper considering Pearl Wagner has not raised any fact tending to show the existence of any security agreement other than the February agreement.

Holding, as we do, that there is no material issue of fact, we turn now to whether the respondents were entitled to summary judgment as a matter of law.

The first question raised by Wagner concerns the enforceability of the security agreement. A security interest is enforceable if it is in writing and sets forth a description of the collateral and the debtor rights in the collateral. It must be signed, and consideration must be given by the secured party for the interest. Section 30-9-203, MCA. All these requirements have been met by the security agreement concerned. It is in writing, describes the property as all equipment, cattle branded C7-R.H. C7-L.H. and ⊐ R.H. and all proceeds thereof. There is no contention that Pearl Wagner was not the owner of these properties. The agreement is signed by Pearl Wagner. Finally, value given by the bank, is represented by the prior $84,000 indebtedness and by the promissory notes issued in March and December. Once all these requirements are met, the security agreement "attaches" and is enforceable against the debtor. Section 30-9-203, MCA. Hence we hold the agreement entered by Pearl Wagner on February 6, 1980 created an enforceable security interest held by the Treasure State Bank.

The terms of the security agreement clearly indicate the collateral would secure joint and single liability of Pearl and Richard Wagner. The agreement states: "To secure the payment and performance of each and every debt . . . whether it is or may be . . . joint, several, [or] joint and several . . .."

Pearl Wagner did not notify the bank until January 12, 1981, that she no longer considered herself or her property liable for her husband's debts. She has raised no issue of fact or legal basis on which the District Court could deny summary judgment on the issue of her cattle's status as security for the note Richard signed November 2, 1980. She may not be personally liable on the underlying debt. Section 40-2-301 and 302, MCA. However, her property remains as collateral for that debt under the security agreement which she signed.

Finally, appellant Wagner contends that the Glasgow Livestock Sales Company was legally obligated to pay the proceeds of the sale of her cattle to her and the Treasure State Bank rather than directly to the bank. Originally the first two checks were made out jointly but payment on those checks was stopped and the proceeds paid directly to the bank. Payment from the final sale was made directly to the bank.

The terms of the security agreement and the applicable statutes allow the livestock company to pay the bank directly. First, the security agreement contains this provision:

> A Secured Party, may, at anytime (both before and after the occurrence of an Event of Default) notify any account debtor or any other person obligated to pay any amount due, that such . . . right to payment has been assigned or transferred to Secured

> Party for security and shall be paid to Secured
> Party.

The provision further provides that the debtor will notify the obligor of the assignment and the secured party could then demand payment. This kind of provision is expressly provided for in security agreements. Section 39-9-502, MCA. Furthermore the facts indicate Richard Wagner, himself, put the stop payment on the second check and brought in the payment to be applied directly on the outstanding debt.

The bank did not perfect by filing a financing statement concerning the security interest until March 2, 1981. The first sale where proceeds were sent directly to the bank occurred prior to the perfection of that security interest. Even that payment, however was proper. Independent of the terms of the agreement or the rules of Montana's commercial code, some of the provisions of the Livestock code apply and even control the other applicable statutes. See § 30-9-203(4), MCA. Section 81-8-301(1), MCA, one of the controlling statutes, provides:

> A livestock market to which livestock is shipped
> may not be held liable to any secured party for the
> proceeds of livestock sold through the livestock
> market by the debtor unless notice of the security
> agreement is filed and a copy is transferred as
> hereinbefore provided.

The inverse implication of this section is that the livestock market would be liable if the notice had been filed and the proceeds were paid to the debtor. The proceeds of the first sale were paid before the Treasure State Bank had filed such a notice. However, the District Court found from the deposition of Robert Fjeldheim, President and General Manager of Glasgow Livestock Sales, Co., that the Wagners themselves informed the sales company that the bank had a security interest in their cattle. Prior to the second sale

the bank filed a notice concerning the security interest created in Wagner's cattle and the Glasgow Livestock Sales Company had received a copy. Therefore the market was obligated to pay the bank for the second sale.

The situation is complicated somewhat by the fact that the security interest enforced in the last sale was one created in cattle owned by another debtor of the Treasure State Bank. These cattle were bought by Pearl Wagner and consigned to Glasgow Livestock Sales Company on the same day. There is no evidence in the record that this security agreement did not contain the exact provision which allowed the bank to demand payment. Furthermore a notice of the security interest in these cattle was also on file with the livestock company. Therefore § 81-8-301(1), MCA, required the livestock company to pay the bank the proceeds.

We conclude that there is no issue of material fact or interpretation of law which precludes the summary judgment granted by the District Court. The judgment and order of the District Court are affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

- 9 -

L.C. Gulbrandson
Justices