**In the Matter of LESLIE BROCK & SONS, Debtors.**

**FIFTH THIRD BANK, Plaintiff,**

v.

**ORIX CREDIT ALLIANCE, et al., Defendants.**

**Bankruptcy No. 1–91–03732. Adv. No. 1–91–0247.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 30, 1992.

John Day, Jr., Cincinnati, Ohio, for plaintiff.

John Cummins, Cincinnati, Ohio, Elizabeth Thompson, Lexington, Ky., for defendants.

## ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment (Doc. 18) and the Memorandum in Support (Doc. 19) filed by Orix Credit Alliance, Inc. ("Orix"), the Motion for Summary Judgment (Doc. 20) and Affidavit of Mark A. Brock (Doc. 22) filed by Fifth Third Bank ("Fifth Third") and Agreed Stipulations of Fact ("Stipulations") (Doc. 21).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

There are no material facts in issue. On June 26, 1989, Leslie Brock & Sons ("Debtor"), leased a forklift, serial number JD 2587N, from C & O Equipment Company ("C & O"), as evidenced by an Equipment Lease Agreement ("June, 1989 Lease") (Exhibit A–1 to Stipulations). This June, 1989 Lease contains future advance and after acquired property language. Also, on June 26, 1989, the June, 1989 Lease was assigned to Orix. (Exhibit A–2 to Stipulations).

On June 30, 1989 and July 5, 1989 respectively, Orix filed financing statements with the Hamilton County, Ohio Recorder and the Secretary of State of Ohio regarding the June, 1989 Lease. (Exhibit A–3 to Stipulations; Exhibit A to Answer of Orix).

On August 15, 1989, the Debtor executed and delivered to Fifth Third a Security Agreement regarding a note dated August 15, 1989 in the amount of $23,000 and a note dated August 15, 1989 in the amount of $20,000. (Exhibit B to Stipulations). This Agreement gave Fifth Third a blanket lien on all of the Debtor's assets. This Agreement contains future advance and after acquired property language.

On August 25, 1989, the Debtor executed and delivered to Fifth Third another Security Agreement regarding a note dated August 25, 1989 in the amount of $32,000 as well as the previous note dated August 15, 1989 in the amount of $20,000. (Exhibit C to Stipulations). This Agreement also gave Fifth Third a blanket lien on all of the Debtor's assets. This Agreement also con-

tains future advance and after acquired property language.

On August 21, 1989, Fifth Third filed financing statements with the Hamilton County Recorder and the Secretary of State of Ohio regarding these transactions. (Exhibit D to Stipulations).

The notes to Fifth Third were renewed several times, most recently on August 25, 1990 (Exhibit E to Stipulations) and on September 22, 1990 (Exhibit F to Stipulations).

On May 1, 1990, the Debtor executed and delivered to Fifth Third a renewal note in the principal amount of $43,138.66 (Exhibit G to Stipulations) which was secured by yet another Security Agreement previously executed by the Debtor on January 17, 1990 again creating a blanket lien on all of the Debtor's assets. (Exhibit G to Stipulations).

On June 4, 1990, the Debtor leased a second forklift, Serial Number JD 1241LN, from C & O as well as 50 sets of scaffolding, as evidenced by an Equipment Lease Agreement ("June, 1990 Lease") (Exhibit H–1 to Stipulations). This June, 1990 Lease, like the earlier lease with C & O, contains future advance and after acquired property language. Also, on June 4, 1990, the June, 1990 Lease was assigned to Orix. (Exhibit H–2 to Stipulations).

On June 11, 1990 and July 18, 1990 respectively, Orix filed financing statements with the Hamilton County Recorder and Secretary of State of Ohio regarding the June, 1990 Lease (Exhibit H–3 to Stipulations; Exhibit D to Answer of Orix).

The Debtor filed its Chapter 7 bankruptcy petition on June 14, 1991.

The first forklift, Serial Number JD 2587N, was sold at public auction on February 13, 1992. The net proceeds of the sale were $33,337.41. The balance due to Orix on the June, 1989 Lease is $49,265.21. The second forklift, Serial Number JD 1241LN, was also sold at public auction on February 13, 1992. The net proceeds of the sale were $20,000. The balance due to Orix on the June, 1990 Lease is $76,388.33.

There is currently due and owing to Fifth Third the amount of $26,259.99 plus interest and other charges on the August 25, 1990 note (Exhibit E to Stipulations), $25,000 plus interest and other charges on the September 22, 1990 note (Exhibit F To Stipulations) and $37,027.88 plus interest and other charges on the May 1, 1990 note (Exhibit G to Stipulations).

In November, 1991, both Orix and Fifth Third filed Complaints for the determination of priorities and for the turnover of assets of the Debtor held by the Trustee, which Complaints were consolidated into this single action. Orix claims that the future advance and after acquired property language of its June, 1989 Lease with the Debtor are effective to secure all amounts due Orix under the June, 1989 Lease and the June, 1990 Lease. Fifth Third claims that the June, 1989 Lease may be set aside or limited in its scope on the grounds of mistake, thereby giving priority to its August, 1989 security interest.

## CONCLUSIONS OF LAW

I. The Language of the Agreement, Unless Unclear or Ambiguous, Represents the Intention of the Parties.

Fifth Third argues that the Debtor did not intend for the June, 1989 Lease to be secured by anything other than the forklift, Serial Number JD 2587N, itself. Despite the good faith requirement of the Uniform Commercial Code, it has been consistently held that where a contract is clear and unambiguous, the language of the contract controls. See, Kimbell Foods, Inc. v. Republic National Bank of Dallas, 557 F.2d 491 (5th Cir.1977) aff'd, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (subsequent lender not allowed to avoid prior lender's security interest by introducing parole evidence regarding parties' alleged intent); Wagner v. Glasgow Livestock Sales Co., 222 Mont. 385, 722 P.2d 1165 (1986) (unambiguous agreement covering future indebtedness means debtor's subjective intent not material issue); In re Continental Resources Corp., 799 F.2d 622 (10th Cir. 1986) (where future advance language is clear, parole evidence of intent not admissible); In re Riss Tanning Corp., 468 F.2d 1211 (2d Cir.1972) (Court will not "interpret

away" obvious meaning of future advance clause).

The pertinent language in the June, 1989 Lease (as well as similar language in the June, 1990 Lease) is as follows:

In any jurisdiction where the Uniform Commercial Code is in effect lessee grants to lessor a security interest in the Equipment and any and all inventory, goods, equipment, machinery, fixtures, chattels, furniture, accounts receivable, contract rights, general intangibles, property and assets of any and every kind, wherever located, now or hereafter belonging to Lessee or in which Lessee has any interest, and proceeds thereof, and agrees that any security interest created by this agreement secures any and all obligations of Lessee at any time owing to Lessor, now existing and/or hereafter incurred.

The security interest covers all obligations of the Debtor whether "now existing and/or hereafter incurred" and covers collateral "of any and every kind, wherever located, now or hereafter belonging to Lessee". There is nothing unclear or ambiguous about the language. Accordingly, we hold that the parole evidence of the Debtor will not be admitted and that there is, therefore, no genuine issue of material fact on this issue.

II. Orix Perfected Its Security Interest By Filing The June, 1989 Lease As Its Financing Statement.

█ Fifth Third contends that the financing statement filed by Orix in June, 1989 is defective because it does not contain the signature of the Debtor, but has only a copy of the security agreement attached to it. However, pursuant to § 1309.39(A) of the Ohio Revised Code, the copy of the security agreement is sufficient as a financing statement if it contains all the necessary information, is signed by the debtor and the security agreement so provides. The June, 1989 Lease provides "Lessor is hereby authorized to file one or more financing statements or a reproduction hereof as a financing statement". The

filing of a copy of the June, 1989 Lease as a financing statement was proper.

Indeed, by the filing of the entire June, 1989 Lease, Fifth Third was clearly put on notice as to the extent of the security agreement held by Orix. Had Fifth Third done a lien search prior to making its August, 1989 loans, it would have seen that the June, 1989 Lease covered all of the Debtor's assets.

III. Orix Acquired a First Priority Security Interest For Its June, 1989 Lease.

█ Pursuant to Ohio Rev.Code Ann. § 1309.15(A), a security agreement may provide that any or all obligations covered by the security agreement may be secured by after acquired collateral. Pursuant to Ohio Rev.Code Ann. § 1309.15(C), obligations covered by a security agreement may include future advances or other value, whether or not the advances or value are given pursuant to the commitment. Based on the foregoing, Orix acquired a first priority security interest to cover its June, 1990 Lease by virtue of the future advance and after acquired property clauses in its June, 1989 Lease.

Pursuant to Ohio Rev.Code Ann. § 1309.-31(E)(1), conflicting security interests rank according to priority in time of filing or perfection. Pursuant to Ohio Rev.Code Ann. § 1309.31(G), if future advances are made while a security interest is perfected, then the security interest has the same priority with respect to the future advance as it does with respect to the first advance. In other words, Orix's June, 1989 Lease and June, 1990 Lease take priority over Fifth Third's security interest, which was perfected in August, 1989.

IV. The Assignment Of The Leases From C & O To Orix Do Not Defeat The Integrity Of The Security Interest.

█ Fifth Third contends that the future advances/after acquired property clause in the June, 1989 Lease is not effective to secure the obligation of the June, 1990 Lease because the June, 1989 Lease provides that "any security interest created by this agreement secures any and all obli-

gations of Lessee at any time owing to *Lessor*, now existing and/or hereafter incurred", (emphasis added) rather than to the assignee of the Lessor. To support its argument, Fifth Third points out that the June, 1990 Lease contains different language, specifically securing "any and all obligations of Lessee at any time owing to [Orix], now existing and/or hereafter incurred ... whether acquired by [Orix] by assignment (from Lessor or any other person or persons) or otherwise." However, we do not read the language in the June, 1989 Lease to be limiting. First, the initial sentence of he June, 1989 Lease specifically contemplates the assignment of the Lease to Orix. Second, the June, 1989 Lease defines Lessor as including the holder, which is defined as the assignee, and it is to the Lessor that the security interest is granted. Third, as far as a subsequent lender is concerned, *who* has the security interest is not nearly as important as the fact that there is a security interest in the first place. In keeping with the "notice filing" intent of the Uniform Commercial Code, Fifth Third, or any other lender, would have been put on notice by the financing statement that future advances would be covered by the June, 1989 Lease. In any event, the financing statement itself clearly shows the creditor as the assignee.

Fifth Third cites two cases in support of its proposition that where parties other than the original lender make the future advance, such new lenders are not protected by the future advance clause. We find both cases to be distinguishable. *In re E.A. Fretz Company, Inc.*, 565 F.2d 366 (5th Cir.1978) addressed a post-petition assignment of a claim which attempted to create a perfected security interest. In the present case, not only was the assignment prepetition, it was contemporaneous with the lease itself. *In re Chandler*, 477 So.2d 360 (Ala.1985) concerned a mortgagee buying up claims held against his mortgagor by third persons. Such is not the case here. We find that the assignment from C & O to Orix does not affect the priority of the security interest.

Accordingly, we find the obligations of the Debtor to Orix evidenced by the June,

1989 Lease and the June, 1990 Lease to be secured by a security interest in all assets of the Debtor, senior to that of Fifth Third. The Motion for Summary Judgment in favor of Orix is hereby GRANTED and the motion for Summary Judgment against Orix is hereby DENIED. The counterclaim of the Trustee against Fifth Third is hereby rendered moot. The crossclaim of the Trustee against Orix shall be set for a status report by separate entry.

IT IS SO ORDERED.