**In the Matter of Kimberly Beth GIDDENS, Debtor.**

**Kimberly Beth GIDDENS, Plaintiff,**

**v.**

**PIONEER CREDIT and Federal Credit, Defendants.**

**Bankruptcy No. 96–50957.**
**Adversary No. 96–5070.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Jan. 29, 1997.

350

Randy E. Wynn, Warner Robins, GA, for Debtor/Plaintiff.

John Ray Davis, Jr., Macon, GA, for Defendant Pioneer.

Emmett L. Goodman, Jr., Macon, GA, for Defendant Federal.

### AMENDED MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion for Reconsideration filed by Defendant, Federal Credit ("Federal"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(K). The following findings of fact and conclusions of law are entered in accordance with Federal Rule of Bankruptcy Procedure 7052.*

### Findings of Fact

On January 19, 1995, Federal made a loan to Debtor and took a non-purchase money security interest in, among other items, a portable utility building and a big screen

* The Court previously published a memorandum opinion in this case on December 4, 1996. Upon review of that opinion it appears that a change in footnote 14 is appropriate. Except for that change, the revised memorandum opinion is identical to the previous opinion.

television set.[1]  On that date, Federal filed a UCC–1 financing statement.  On June 19, 1995, Pioneer Credit ("Pioneer") made a loan to Debtor.  At that time they took a security interest in the same utility building and television set.[2]  Pioneer filed its financing statement twenty-five days later on July 12, 1995.  There appears to be no significance to that delay.  Also, on July 12, 1995, Federal refinanced Debtor's loan, executing a new note and security agreement and advancing additional funds in the amount of $30.00.[3]  Two days later, on July 14, 1995, Federal filed a new financing statement without any reference to its prior UCC–1.

On March 8, 1996 Debtor filed for relief under Chapter 7 of the Bankruptcy Code. This adversary proceeding was filed by Debtor in order to determine priority between Federal and Pioneer as to the utility building and big screen television set.  On October 3, 1996, this Court entered a Memorandum Opinion and Order which held that Pioneer had a first priority security interest in the aforementioned collateral based on the holding that Federal's second loan was a transformation/novation of its first loan.  The Court stated that, "[u]nder Georgia law, a renewal will maintain its original priority while a transformation will be considered an entirely new transaction with its own priority."  (Memorandum Opinion at 5.)  Under that authority, the Court held that, by refinancing the original loan, Federal had caused a transformation of the original loan, and, accordingly, lost its first in time priority to Pioneer.

Subsequently, Federal filed a timely Motion for Reconsideration.  In its motion, Federal contends that the Court did not consider the character of the new loan as one which may have been secured by the prior UCC–1 as a subsequent advance.  Also, Federal contends, that, because of subsequent advance provisions of the first loan and security agreement, the transformation analysis is not dispositive of the issue of priority, as it might have been if the first transaction had been based on a purchase money security interest.

After further consideration, it appears that Federal is correct in that the transformation analysis does not fully resolve the question of priority.  Accordingly, the Motion for Reconsideration will be granted, and the Court will now address the further intricacies of the legal issues presented.

### Conclusions of Law

The basic issue presented here is the effect, if any, of a second UCC–1 filing on the priority established by an earlier UCC–1 filing by the same creditor covering the same collateral.  The issue, however, is complicated by the fact that the collateral consists only of consumer goods securing an obligation of less than $5,000.00.[4]  Where such collateral is claimed as security, O.C.G.A. § 11–9–402(1) requires that the maturity date of the loan, if there is one, be noted on the financing statement.[5]

In addition, O.C.G.A. § 11–9–403(2) provides that "a filed financing statement is effective for a period of five years from the

---

1.  The original amount of the Federal loan was $1,147.20.  The collateral securing the loan consisted of one Sony big screen television set, one 8′ × 10′ masonite storage building, one Panasonic VCR, one Magic Chef microwave oven and one Sony Handi–Cam Video Camera Recorder.

2.  The original amount of the Pioneer loan was $1,186.14.  The collateral securing the loan was the same 8′ × 10′ masonite storage building and Sony big screen television set in which Federal had a security interest.

3.  The original amount of this second loan by Federal was $1,037.93.  The collateral securing the loan was the same as that listed in the January 19, 1995 security agreement.  *See supra* note 1.

4.  The Official Code of Georgia contains special rules for this type of collateral.  *See* O.C.G.A. §§ 11–9–402(1) & (4) (formal requisites and amendment of financing statements); §§ 11–9–403(2) & (3) (lapse and continuation of financing statements).

5.  In relevant part, O.C.G.A. § 11–9–402(1) states:

    A financing statement is sufficient if it complies with the requirements of this Code . . ., and, where both (i) the collateral described consists only of consumer goods as defined in Code Section 11–9–109 and (ii) the secured obligation is originally $5,000.00 or less, gives the maturity date of the secured obligation or specifies that such obligation is not subject to a maturity date.

date of filing or until the twentieth day following any maturity date specified in the financing statement, whichever is earlier." Thus, for such collateral, the five year period of effectiveness normally given to a financing statement may be reduced by the terms of the transaction.

On January 19, 1995, Federal filed a UCC–1 financing statement as notice of their security interest in certain consumer goods to secure a loan of $1,147.20. Pursuant to O.C.G.A. § 11–9–402(1), the financing statement specified April 17, 1996 as the maturity date of the loan. Thus, absent any further filings, Federal's January, 1995 financing statement would have lapsed after the passing of the twentieth day following this stated maturity date of the note. As will be discussed later in this opinion, Debtor's bankruptcy filing alters this outcome.

Two more filings took place after Federal's initial filing. On July 12, 1995, Pioneer filed a financing statement to perfect a security interest in the same masonite storage building and big screen television covered by Federal's January 19, 1995 financing statement.[6] It is not disputed that, based upon the order of filings at that time, Federal would have a first priority security interest. The difficulty

in determining the relative priorities between Federal and Pioneer arose after Federal filed a second financing statement on July 14, 1995, following the refinancing of Debtor's original loan obligation and the advance of additional funds.[7]

Rather than filing a new financing statement, Federal could have chosen to rely on the future advances clause of its original security agreement.[8] See O.C.G.A. § 11–9–204(3). But Federal chose to file the second UCC–1. This leaves the Court to determine if that second UCC–1 serves to deny to Federal the benefit of security status on a subsequent advance basis.

Should the second filing be treated as a continuation statement or amendment to the first filing? Should the second filing be disregarded as ineffective for any purpose? Or should the second filing have some separate and distinct significance in addition to the first filing? Each of these alternatives deserves separate consideration.

■ The Official Code of Georgia contemplates the use of a continuation statement in the consumer goods collateral context at issue here.[9] This provision makes it clear that

6. Pursuant to O.C.G.A. § 11–9–402(1), this financing statement indicated that the maturity date of the loan Pioneer made to Debtor was to be December 19, 1996.

7. Pursuant to O.C.G.A. § 11–9–402(1), this financing statement indicated that the maturity date of the refinanced Federal loan was to be October 12, 1996.

8. While there is authority that the security agreement must contain an actual future advances clause, see Barksdale v. Peoples Fin. Corp., 393 F.Supp. 112 (N.D.Ga.1975), rev'd on other grounds, 543 F.2d 568 (5th Cir.1976), other courts disagree, holding that no such clause is needed in order to exercise a future advances and still maintain the original priority. See, e.g., Allis–Chalmers Credit Corp. v. Cheney Investment, Inc., 227 Kan. 4, 605 P.2d 525 (1980); James Talcott, Inc. v. Franklin Nat'l Bank, 292 Minn. 277, 194 N.W.2d 775 (1972) ("Parties may use future-advances and after-acquired clauses, and they are a great convenience. But, if they are not used, there is nothing in the code which prevents the parties from accomplishing the same result by entering into one or more additional security agreements."). This Court, however, is not presented with this truly difficult question because Federal's original security

agreement actually contained a future advances clause. Specifically, the agreement indicates that the collateral described therein will "secure payment of a promissory note of even date and all other obligations, present and future, of Borrower to Lender."

9. Specifically, the statute states the following:
The continuation statement must ..., where both (i) the collateral described consists only of consumer goods as defined in Code Section 11–9–109, and (ii) the secured obligation as defined in subsection (1) of Code Section 11–9–402 is originally $5,000.00, or less, specify the maturity date of the secured obligation or specify that such obligation is not subject to a maturity date.... Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for a period of five years after the date to which the filing was effective or until the twentieth day following any maturity date specified in the continuation statement, whichever is earlier, whereupon it lapses in the same manner as provided in subsection (2) of this Code section unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement.

the statute permits a continuation statement in a consumer goods collateral situation. Accordingly, Federal could have preserved its first-in-time priority status by filing a continuation statement.

In order to qualify as a continuation statement, the filing "must be presented on the form prescribed by the Georgia Superior Court Clerks' Cooperative Authority for continuation statements and must identify the file number and the date of the original statement...." O.C.G.A. § 11–9–403(3). In Georgia, a UCC–3 is the proper form to be used when filing a continuation statement. Georgia Superior Court Clerks' Cooperative Authority, *UCC Administrative Procedure*, Rule IX., at 10 (1995). The July 14, 1995 filing by Federal was on a UCC–1 form, the proper form for original financing statements. Therefore, that filing cannot be considered a continuation statement.

■ Next, can the July 14, 1995 filing be considered an amendment to the original January 19, 1995 financing statement? Amendments to financing statements are covered by O.C.G.A. § 11–9–402(4).[10] Federal's July 14, 1995 filing cannot be considered an amendment to the original financing statement because the changes made on Federal's second filing were more material than the type of amendments that O.C.G.A. § 11–9–402(4) contemplates. More significantly, however, Federal's second filing attempts to extend the effective period of the original filing, a result which cannot be accomplished

by filing an amendment.[11] *See* O.C.G.A. § 11–9–402(4) ("An amendment does not extend the period of effectiveness of a financing statement.").

■ Since Federal's second filing can neither be considered a continuation statement nor an amendment, the Court must determine its legal significance. The Court is reluctant to conclude that the second filing has no significance and should be ignored as ineffective for any purpose. Such a clearly intentional act would seem to have some legal significance. On the other hand, the policy of the Uniform Commercial Code encourages notice of liens. Any creditor who gives such notice in furtherance of the purposes of the code, should not be deemed to have surrendered an otherwise valuable right. In coming to this conclusion, the Court finds itself without any supporting or conflicting precedent. The second filing should not be construed in a way that harms Federal's position, yet at the same time, it should be construed as having some separate significance.

Accordingly, the second UCC–1 will be deemed to be a back-up financing statement with its own separately established priority. Under the facts of this case, but absent the filing of Debtor's bankruptcy petition on March 8, 1996, the second filing would have no practical effect as long as the first filing remained effective. However, upon the lapsing of the first financing statement, Federal's priority would be established as of the date

O.C.G.A. § 11–9–403(3).

**10.** In relevant part O.C.G.A. § 11–9–402(4) states the following:

> A financing statement may be amended by filing a writing signed by both the debtor and the secured party, except that where the amendment only changes the name or address of the secured party, or the address or the social security number or Internal Revenue Service taxpayer identification number of the debtor, or corrects only typographical or other clerical errors set forth in the financing statement, such amendment may be filed without being signed by the debtor. Each amendment shall be filed with the filing officer of the county in which the financing statement being amended was filed. An amendment does not extend the period of effectiveness of a financing statement. If any amendment adds collateral, it is effective as to the added collateral only from the filing date of the amendment.

> In this article, unless the context otherwise requires, the term "financing statement" means the original financing statement and any amendments.

**11.** Federal's January 19, 1995 filing stated that the maturity date of the loan was to be April 17, 1996.

Therefore, absent any further filings, that financing statement would lapse at the close of the twentieth day following that date. *See* O.C.G.A. § 11–9–403(2). Federal's July 14, 1995 filing stated that the maturity date of the loan was to be October 12, 1996. If the Court were to allow that second filing to be considered an amendment to the first filing, it would be allowing an amendment to extend the period of effectiveness of the filing, a result which is prohibited by O.C.G.A. § 11–9–402(4).

354

of the filing of its second financing statement. Here, since the first financing statement would have lapsed after the twentieth day following April 17, 1996 (the stated maturity date of the loan), Federal's priority would then have been established on July 14, 1995, the date of the second filing.[12] As a result Federal would have relinquished its first-in-time priority to Pioneer since Pioneer's priority date of July 12, 1995 would precede Federal's by two days.

■ In this case, Debtor's bankruptcy petition added a curious wrinkle by preserving Federal's first-in-time priority throughout the pendency of the bankruptcy case and for a period of up to sixty days after the close of the case. O.C.G.A. § 11–9–403(2).[13] Here, the bankruptcy case was commenced on March 8, 1996. As of that date, Federal's first financing statement was still effective.

If the bankruptcy petition had not been filed, that first UCC filing would have lapsed after the twentieth day following April 17, 1996 (the stated maturity date of the loan), leaving Federal in second position. However, the filing of the bankruptcy case has preserved Federal's priority position as of that date. Therefore, with the bankruptcy case still pending, Federal remains as the creditor with first priority.[14]

An order in accordance with this opinion will be entered on this date.

12. In the absence of any further filings, even this second financing statement would have lapsed after the passing of the twentieth day following October 12, 1996, the stated date of maturity of the refinanced loan.

13. Specifically, O.C.G.A. § 11–9–403(2) states the following:

If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a

period of sixty days or until the normal expiration date of the financing statement, whichever occurs later.

14. It should be noted that upon the closing of the bankruptcy case, assuming the liens are not avoided under some other provision of the Bankruptcy Code, Federal will only retain its priority position for a period of sixty days, unless a continuation statement is filed within that time to extend the period of effectiveness of the original financing statement.