In re K & P LOGGING, INC., Debtor.

**Bank of America, N.A., Plaintiff,**

v.

**Case Credit Corporation, Orix Credit Alliance, Inc. and The Palmetto Bank, Defendant.**

**Bankruptcy No. 00–6061–B.
Adversary No. 00–80279–B.**

United States Bankruptcy Court,
D. South Carolina.

July 19, 2001.

Randy A. Skinner, Greenville, SC, for Debtor.

Ralph C. McCullough, II, Columbia, SC, Trustee.

Weyman C. Carter, Greenville, SC, for Bank of America, N.A.

Charles P. Summerall, IV, Charleston, SC, for Orix Credit Alliance, Inc.

## ORDER

WM. THURMOND BISHOP, Chief Judge.

Before the Court in this adversary proceeding are the cross-motions for summary judgment filed by the Plaintiff, Bank of America, N.A. (BOA), and the Defendant, ORIX Credit Alliance, Inc. n/k/a ORIX Financial Services, Inc. (ORIX).[1] Based upon the record in this proceeding, the arguments of counsel, and a review of applicable law, the Court concludes that ORIX's motion for summary judgment should be granted and BOA's motion for summary judgment should be denied.

---

1. Issues involving the other Defendants will be addressed in separate orders of the Court.

## FINDINGS OF FACT

BOA and ORIX stipulated to the following facts:

1. This is an action to determine the validity, extent and priority of liens arising in the above-captioned case filed on July 14, 2000, by K & P Logging, Inc. (hereinafter K & P Logging or the Debtor).[2]

2. The Debtor is a South Carolina corporation with its principal place of business in Greenwood County, South Carolina. The Debtor is a timber logging company that owns and uses various items of equipment in the ordinary course of its business.

3. As of the date of filing of the petition, the Debtor owned a number of pieces of logging equipment, including two specific items in which BOA and ORIX assert competing security interests (the Disputed Collateral):

   a. Timberjack 460 skidder s/n 985584 with 100″ Esco grapple s/n SNSP22511; and

   b. Hydro–Ax 511 EX cutter s/n 6663; with 20″ Koehring sawhead s/n 980828.

4. On August 28, 1996, NationsBank, N.A. (NationsBank) made a loan to K & P Logging, Inc., Phillip E. Wood, and Kimberley M. Wood in the original principal amount of $522,000.00, which loan was guaranteed by the U.S. Small Business Administration (the SBA Loan). As security for the SBA Loan, BOA asserts that K & P Logging, Inc. granted to NationsBank a security interest in all of its then-existing and after-acquired equipment and machinery (along with other collateral not relevant to this action). The SBA Loan is evidenced by the following relevant loan documents prepared by the SBA and/or NationsBank:

   a. U.S. Small Business Administration Note;

   b. Loan Agreement;

   c. Security Agreement (SBA Form);

   d. Security Agreement (NationsBank Form); and

   e. UCC–1 Financing Statement.

5. Subsequent to the making of the SBA Loan, ORIX (or its assignor) financed the Debtor's purchases of a number of items of equipment. Each sale is evidenced by a Conditional Sale Contract Note prepared by ORIX (or its assignor) and signed by the Debtor, copies of which are attached to the UCC–1 Financing Statements referenced below.

6. The SBA Loan held by BOA (as successor by merger to NationsBank) remained unpaid as of the commencement of the Debtor's Chapter 11 case.

7. Five of the six obligations owed to ORIX, including the obligations evidenced by the two Conditional Sale Contract Notes by which the Disputed Collateral were financed, remained unpaid as of the commencement of the Debtor's Chapter 11 case.

8. BOA and ORIX rely upon the following UCC–1 Financing Statements signed by the Debtor and filed with the South Carolina Secretary of State to establish their claims to the Disputed Collateral:

| Filing Date | Certificate No. | Secured Party | Collateral Description |
| --- | --- | --- | --- |
| September 19, 1996 | 960919–113244A | BOA | All equipment, machinery, FF & E |

**2.** The case was originally filed under Chapter 11 of the Bankruptcy Code, but subsequently converted to Chapter 7 during the pendency of this adversary proceeding.

| Date | Number | Party | Description |
|---|---|---|---|
| October 7, 1997 | 971007–102204A | ORIX | The property and/or the equipment and all other types of collateral as described in the attached entire agreement and in any schedule attached thereto. The attached security agreement and any schedule attached thereto are being submitted for filing as a financing statement. The specific "property" was a Hydro Ax 411 EX s/n 6455, and the "collateral" included, among other things, all equipment then owned or thereafter acquired by the Debtor. |
| November 4, 1997 | 971104–124805B | ORIX | The property and/or the equipment and all other types of collateral as described in the attached entire agreement and in any schedule attached thereto. The attached security agreement and any schedule attached thereto are being submitted for filing as a financing statement. The specific "property" was an Evans Tandem 25–ton Skidder Trailer s/n 1J9E145B8V1003867 and Evans Drop Frame Pulpwood Trailer s/n1J9G14QB1V1003884, and the "collateral" included, among other things, all equipment then owned or thereafter acquired by the Debtor. |
| December 19, 1997 | 971219–101247C | ORIX | The property and/or the equipment and all other types of collateral as described in the attached entire agreement and in any schedule attached thereto. The attached security agreement and any schedule attached thereto are being submitted for filing as a financing statement. The specific "property" was a Pitts log trailer Mod. LP40–4L, and the "collateral" included, among other things, all equipment then owned or thereafter acquired by the Debtor. |
| October 5, 1998 | 981005–140058A | ORIX | The property and/or the equipment and all other types of collateral as described in the attached entire agreement and in any schedule attached thereto. The attached security agreement and any schedule attached thereto are being submitted for filing as a financing statement. The specific "property" was a Timberjack 460 s/n 985584 with 100"Esco Grapple s/n SNSP22511, and the "collateral" included, among other things, all equipment |

| | | | then owned or thereafter acquired by the Debtor. |
|---|---|---|---|
| March 3, 1999 | 990303–090153A | ORIX | The property and/or the equipment and all other types of collateral as described in the attached entire agreement and in any schedule attached thereto. The attached security agreement and any schedule attached thereto are being submitted for filing as a financing statement. The specific "property" was a Hydro Ax 511 EX s/n 6663; 20″ Koehring sawhead s/n 980828, and the "collateral" included, among other things, all equipment then owned or thereafter acquired by the Debtor. |

9. ORIX attached copies of its Conditional Sale Contract Notes as exhibits to its UCC–1 Financing Statements. The specific items financed by ORIX are listed on the face of each Note, and ORIX holds a purchase money security interest as to those items. ORIX's Notes further contain grants of a blanket lien in all of the Debtor's then-existing and after-acquired equipment (and other items) as additional collateral for the obligations referenced in the Notes.

10. ORIX's Financing Statements contemporaneously executed in connection with the sale of the Timberjack skidder (UCC–1 filed on October 5, 1998) and in connection with the sale of the Hydro AX cutter (UCC–1 filed on March 3, 1999) were filed more than ten (10) days after the date on which the Debtor took possession of each item.

11. ORIX relies upon the filing of the October 7, 1997 Financing Statement, and/or the Financing Statements filed on November 4, 1997 and December 19, 1997, in asserting perfection of purchase money security interests in the Disputed Collateral. At the time K & P acquired rights in the Disputed Collateral, each of the obligations secured by these Financing Statements was still outstanding.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056(c), provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is no longer regarded as a disfavored procedural short-cut; it is a salutary method of disposition "designed 'to secure the just, speedy and inexpensive determination of every action.'" *The Exchange Bank of Kingstree v. South Carolina Nat'l Bank (In re Dig It, Inc.)*, 129 B.R. 65, 66 (Bankr.D.S.C.1991), *citing Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560 (Fed.Cir. 1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because BOA and ORIX stipulated to the relevant facts, summary judgment is appropriate. *See Mitchell v. Data General Corp.*, 12 F.3d 1310 (4th Cir.1993).

## CONCLUSIONS OF LAW

BOA and ORIX agree that Article 9 of the Uniform Commercial Code (UCC), as adopted in South Carolina, controls the disposition of this lien priority dispute.

### A. ORIX's PURCHASE MONEY SE-CURITY INTERESTS IN THE DIS-PUTED COLLATERAL HAVE PRI-ORITY PURSUANT TO S.C. CODE ANN. § 36–9–312(4).

Between September 1997 and March 1999, ORIX financed the acquisition by K & P of various items of equipment, including three titled vehicles, in six separate transactions. Each of the transactions was documented on a Conditional Sale Contract Note. It is the lien priority on the two items of equipment financed on the last two transactions which is the subject of this dispute. NationsBank, N.A., as predecessor to BOA, extended financing to K & P and its owners, Kim and Phil Wood, in 1996.

The Joint Stipulation of Facts sets forth the transactions entered into between ORIX and the Debtor and also identifies the chronological filings of UCC–1 financing statements by BOA and ORIX relating to the Debtor's equipment items. ORIX's first three financing statements, filed with the South Carolina Secretary of State on October 7, 1997, November 4, 1997, and December 19, 1997, are collectively referred to herein as the "Prior Financing Statements." ORIX's two later financing statements, signed by the Debtor contemporaneously with the Debtor's purchase of the Disputed Collateral and filed on October 5, 1998 (Timberjack) and March 3, 1999 (Hydro Ax) are collectively referred to herein as the "Contemporaneous Financing Statements."

BOA asserts a senior priority security interest in the Disputed Collateral on the grounds that ORIX's Contemporaneous Financing Statements were not filed with the Secretary of State within ten days after the Debtor received possession of the Disputed Collateral. As analyzed below, however, it is ORIX's filing of the Prior Financing Statements-not the Contemporaneous Financing Statements-that establishes the priority of ORIX's purchase money security interests in the Disputed Collateral over the security interest asserted by BOA.

"A security interest is a 'purchase money security interest' to the extent that it is: (a) taken or retained by the seller of the collateral to secure all or part of its price." S.C.Code Ann. § 36–9–107(a) (Law. Co-op.1976 & Supp.2000). Priority issues aside, BOA does not dispute that ORIX's security interests in the Disputed Collateral involve "purchase money" financing.

South Carolina Code Ann. § 36–9–312(4) provides that:

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.[3]

A security interest is "perfected" when it has "attached" and, in the case of equipment, a financing statement has been filed in the Office of the Secretary of State. See S.C.Code Ann. § 36–9–303(1) (Law. Co-op.1976 & Supp.2000). A security in-

---

**3.** This statute was amended in 2000 to extend the time for perfection of a purchase money security interest from ten to twenty days after a debtor receives possession of collateral. All statutory citations herein refer to the applicable Uniform Commercial Code statutes as adopted in South Carolina at the time of the disputed transactions.

terest does not "attach" unless: "(a) . . . the debtor has signed a security agreement which contains a description of the collateral. . .; (b) value has been given; [and] (c) the debtor has rights in the collateral." S.C.Code Ann. § 36–9–203(1) (Law. Co-op.1976 & Supp.2000). "[A]ttachment occurs as soon as all of the events specified in subsection (1) have taken place." S.C.Code Ann. § 36–9–203(2) (Law. Co-op.1976 & Supp.2000). Pursuant to the South Carolina Code, ORIX's purchase money security interests "attached" at the time that the Debtor executed each of the two Conditional Sale Contract Notes, pursuant to which the Debtor acquired rights in the Disputed Collateral and ORIX (or its assignor) gave value in the form of purchase money financing.

Section 36–9–402(1) provides that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches." In this case, ORIX had properly filed the three Prior Financing Statements with the Secretary of State before the attachment of its purchase money security interests in the Disputed Collateral. Section 36–9–303(1) specifically states that "[i]f the steps [for perfection] are taken before the security interest attaches, it is perfected at the time when it attaches." Official Comment 1 to § 36–9–303 adds that "[i]f the steps for perfection have been taken in advance (as when the secured party files a financing statement before giving value or before the debtor acquires rights in the collateral), then the *interest is perfected automatically when it attaches.*" (emphasis added).

Section 36–9–402(1) also provides that a financing statement is sufficient if it "contains a statement indicating the types, or describing the items, of collateral." Official Comment 2 to § 36–9–402 states that:

"the financing statement is effective to encompass transactions under a security agreement not in existence and not contemplated at the time the notice was filed, if the description of collateral in the financing statement is broad enough to encompass them. Similarly, the financing statement is valid to cover after-acquired property and future advances under security agreements whether or not mentioned in the financing statement."

In this case, each of ORIX's Prior Financing Statements describes the collateral as:

THE PROPERTY AND/OR THE EQUIPMENT AND ALL OTHER TYPES OF COLLATERAL AS DESCRIBED IN THE ATTACHED ENTIRE AGREEMENT AND IN ANY SCHEDULE ATTACHED THERETO. THE ATTACHED SECURITY AGREEMENT AND ANY SCHEDULE ATTACHED THERETO ARE BEING SUBMITTED FOR FILING AS A FINANCING STATEMENT.

In addition to describing the specific "Property" which the Debtor purchased pursuant to the corresponding Conditional Sale Contract Notes, each of the Notes contains the following provision:

*The Buyer grants to Holder a security interest in the Property and any and all* documents, instruments, chattel paper, goods, general intangibles, inventory, machinery, contract rights, *equipment,* fixtures, accounts and insurance *in which Buyer now or hereafter has any right or interest* (all of the foregoing, together with all accessories, attachments, replacements, substitutions and accessions thereto, wherever located, and all proceeds, products and rents therefrom collectively called "Collateral") *and agrees that said security interest secures the payment, performance and fulfillment of all obligations of*

*Buyer to Holder* or any affiliate of Holder *whether such obligations are now existing or hereafter incurred or arising,* are contingent or non-contingent, are direct or indirect, arise by assignment or otherwise *or are contemplated or not contemplated as of the date of this contract note.* (emphasis added).

Each of the Prior Financing Statements thus included "equipment" as a type of covered collateral. The Prior Financing Statements, which attached and incorporated the corresponding Notes, were thus sufficient to perfect security interests in the Disputed Collateral, *e.g.,* equipment thereafter acquired by the Debtor. *See, e.g., Credit Alliance Corp. v. Jebco Coal Co., Inc.,* 688 F.2d 10 (3rd Cir.1982); *In re Rivet,* 299 F.Supp. 374 (E.D.Mich.1969); *Fifth Third Bank v. Orix Credit Alliance (In re Leslie Brock & Sons),* 147 B.R. 426 (Bankr.S.D.Ohio 1992); Official Comment 2 to S.C.Code Ann. § 36–9–402 (Law. Co-op.1976 & Supp.2000).

When the Debtor executed the respective Notes for the purchase of the Disputed Collateral, the Debtor granted ORIX, as "Holder," purchase money security interests in the Disputed Collateral. Those security interests were automatically perfected by virtue of the Prior Financing Statements covering "equipment" which were previously filed with the South Carolina Secretary of State. *See In re Tenpenny,* 64 B.R. 217 (Bankr.E.D.Tenn. 1986). Although ORIX also filed the Contemporaneous Financing Statements in conjunction with the Debtor's purchase of the Disputed Collateral, those additional filings were not necessary to perfect its purchase money security interests in the Disputed Collateral. *See Giddens v. Pioneer Credit (In re Giddens),* 205 B.R. 349, 353 (Bankr.M.D.Ga.1997) (holding "second UCC–1 will be deemed to be a back-up financing statement with its own separately established priority").

At the moment the Debtor received possession of the Disputed Collateral items, ORIX's purchase money security interests attached, were automatically perfected by virtue of the Prior Financing Statements, and are therefore entitled to purchase money priority over BOA under S.C.Code Ann. § 36–9–312(4).

## B. ADEQUACY OF DESCRIPTION

■ BOA asserts that ORIX's loan documents do not adequately describe the Disputed Collateral items. Pursuant to § 36–9–110, "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." The Disputed Collateral items are "equipment" that is expressly covered by ORIX's three Prior Financing Statements filed with the Secretary of State before the attachment of its purchase money security interests in the Disputed Collateral. The purpose of "notice filing" is to give third parties notice that the Debtor's property may be encumbered. ORIX's Prior Financing Statements satisfy that purpose, and any third party making further inquiry would learn of ORIX's purchase money security interests in the Disputed Collateral. BOA cites no authority for the proposition that the general collateral description authorized by § 36–9–110 does not apply to purchase money security interests. To the contrary, Revised UCC § 9–108(b), while not yet adopted in South Carolina, clarifies that a description of collateral by Article 9 "type" (*e.g.,* "equipment") suffices to describe the collateral in commercial transactions.

BOA's argument that ORIX's existing "blanket lien" filing was ineffective to perfect the subsequent security interests in the Disputed Collateral is not supported by the UCC, which provides that a financ-

ing statement is sufficient if it identifies the collateral by item or type, equipment being an example of "type." *See* S.C.Code Ann. § 36–9–402(1) (Law.Co-op.1976). The UCC also provides that a financing statement can be filed even before a security interest is granted. BOA itself relies on its filing against "equipment" to claim its security interest in the Disputed Collateral. ORIX's contracts grant a security interest in the "Property *and* ...all...equipment." The contracts also provide for future advances. ORIX could have filed a single financing statement— even before K & P granted ORIX any security interest—and such filing would have been sufficient to perfect all subsequent purchase money transactions at the moment the Debtor obtained rights in the collateral. The fact that ORIX filed subsequent financing statements does not alter the effect of its first filing; rather, it is simply a matter of "belt and suspenders." *See Giddens v. Pioneer Credit (In re Giddens)*, 205 B.R. at 353 (Bankr.M.D.Ga. 1997). Nor does the fact that ORIX's financing statement which identified both items and types lessen the effectiveness of the filing as to one or the other. *Hixon v. Credit Alliance Corp.*, 235 Va. 466, 369 S.E.2d 169 (1988).

A number of cases support the conclusion that ORIX's blanket reference to after-acquired "equipment" in the Prior Financing Statements adequately described the subsequently financed Disputed Collateral items. In *John Deere Co. v. Production Credit Ass'n*, 686 S.W.2d 904 (Tenn. Ct.App.1984), the Production Credit Association perfected a security interest in 1980 in "all farm machinery and equipment, including but not limited to all tractors, tilling and harvesting equipment" then owned or thereafter acquired by the borrower. *Id.* at 904–05. At that time, the borrower owned a John Deere 6600 Combine. In 1981, the combine burned. Thereafter, the Production Credit Association loaned additional monies to the borrower to be used as a down payment on the purchase of a new combine. The Production Credit Association did not obtain a new security agreement from the borrower, and no new financing statement was filed. Nevertheless, the court held that the Production Credit Association had a first priority purchase money security interest in the new combine:

> Deere asserts that a new financing statement had to be filed for P.C.A. to obtain a purchase money security interest in the combine. We see no reason for a second filing of a financing statement by P.C.A. to insure a purchase money security interest. The first filing was notice to the world of a security interest in farm equipment and after-acquired property, and any further notice filing would be, in our opinion, supererogation.

*Id.* at 907.

In *James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972), the plaintiff Talcott made a loan to a borrower for the purchase of two trucks and some other construction equipment. In the financing statement, Talcott described the collateral as "construction equipment; motor vehicles." After Talcott filed its financing statement, the borrower granted the defendant bank a security interest in three other trucks and equipment. Subsequently, the borrower and Talcott executed a second security agreement in connection with an extension agreement. In the second security agreement, the borrower granted Talcott a security interest in the collateral in which the bank asserted a security interest. Talcott did not file an additional financing statement in connection with the second security agreement. The Supreme Court of Minnesota deter-

mined that Talcott's original financing statement was sufficient to give notice of the original security agreement and the second security agreement. The Court referred to the authorization, contained in UCC Section 9–402(1), permitting the filing of a financing statement even before a security agreement is made. The court went on to state:

> The whole purpose of notice filing would be nullified if a financing statement had to be filed whenever a new transaction took place between a secured party and a debtor. Once a financing statement is on file describing property by type, the entire world is warned, not only that the secured party may already have a security interest in the property of that type (as did plaintiff in the property originally financed), but that it may later acquire a perfected security interest in property of the same type acquired by the debtor in the future. When the debtor does acquire more property of the type referred to in the financing statement already on file, and when a security interest attaches to that property, the perfection is instantaneous and automatic. [UCC Section 9–303(1) ].

*Id.,* 194 N.W.2d at 783.

Because of the unusual time gap involved, *In re Gilchrist Co.,* 403 F.Supp. 197 (E.D.Pa.1975), is an interesting example of the line of cases which follows *Talcott* and applies the concept that a duly filed financing statement, showing the same debtor, the same secured party, and the same type of collateral, serves to perfect a security interest created in a transaction other than that for which the financing statement was originally filed. In *Gilchrist,* a bank filed a financing statement at the time of the original loan to a borrower in 1959. That financing statement was still in effect at the time the

bank made a new loan agreement with the borrower in 1974. Between the original loan in 1959 and the new loan in 1974, there was an intervening two-year period in which all bank loans were unsecured, and by 1972 all loans then outstanding had been repaid in full. Nevertheless, the court concluded that the bank, which had never been requested to terminate the financing statement, was not required to file a new financing statement in connection with the 1974 loan.

The case of *Frank v. James Talcott, Inc.,* 692 F.2d 734 (11th Cir.1982) further supports the concept that a financing statement which adequately describes collateral can serve to perfect a security interest not contemplated by the parties at the time of the filing of the financing statement. Talcott and LSI entered into a loan agreement in 1973 providing Talcott with a security interest in the sales contracts from units 12–19 of a land development in Florida. Talcott filed a financing statement in 1973 describing the collateral as *"all* of LSI's present and future installment sales contracts, including the proceeds thereof." *Id.* at 737. Talcott and LSI amended the 1973 loan agreement in 1974, granting Talcott a security interest in the contracts from units 1–11. The court concluded that Talcott's 1973 financing statement automatically perfected its interest in this additional collateral granted in 1974. After noting the specification in UCC Section 9–402(1) that a financing statement may be filed before a security agreement is made or a security interest otherwise attaches, the court stated:

> The Uniform Commercial Code contains no requirement that a financing statement refer to any security agreement that may exist between the parties designated in the financing statement. The central purpose of filing a financing statement is to provide notice that the

creditor *may* have a security interest in the named collateral, the details of which can be ascertained upon further inquiry of the named parties. Moreover, consideration of the commercial realities of modern day financing militates against a requirement that a secured creditor must refile each time it enters into a new loan agreement with a debtor to whom the creditor lends money on a regular basis. Therefore, we agree that a financing statement which adequately describes the collateral can serve to perfect a security interest not contemplated by the parties at the time of the initial filing.

*Id.* at 738 (citations omitted).

## C. "TRANSFORMATION" VERSUS "DUAL STATUS" RULES

■ BOA also asks this Court to make new law in South Carolina and the Fourth Circuit by applying the so-called "transformation" rule in a commercial context. Specifically, BOA asks this Court to hold that a cross-collateralization provision, commonly utilized in commercial transactions, destroys a purchase money security interest since the lien secures more than the purchase price for a particular item. In support of this argument, BOA cites several consumer cases in this district pertaining to lien avoidance under 11 U.S.C. § 522(f). *See, e.g., Rosen v. Associates Fin. Services Co.,* 18 B.R. 723 (Bankr. D.S.C.1981); *In re Haus,* 18 B.R. 413 (Bankr.D.S.C.1982); *In re Farmer,* No. 96–71977–B (Bankr.D.S.C. filed July 23, 1996); *In re Mosely,* No. 96–71639–W (Bankr.D.S.C. filed May 15,1996). These cases are inapplicable for several reasons:

(1) The cited cases deal with consumer goods, whereas this adversary proceeding involves commercial transactions dealing with equipment-an entirely different category of collateral. *See* S.C.Code Ann. § 36–9–109(1) and (2).[4]

(2) The cited cases involve the "fresh start" policy underlying consumer bankruptcies. 11 U.S.C. § 522(f) furthers the "fresh start" policy by allowing consumer debtors to retain a certain amount of their household goods if there is no creditor with a purchase money security interest in the goods. This adversary proceeding does not involve lien avoidance issues or policies. In fact, it does not directly involve the Debtor, but rather two creditors asserting priority of their lien.

(3) The cited cases all involve refinances and/or debt consolidations, whereas this adversary proceeding does not involve either a refinance or a debt consolidation. To the contrary, the Debtor and ORIX have always maintained separate and distinct accounts regarding each purchase money collateral item financed by ORIX.

Even in the consumer context, courts are split over whether to apply the "transformation" rule or the so-called "dual status" rule. *Sears, Roebuck & Co. v. Nelson (In re Nelson),* No. 7:90–1942–3 (D.S.C. filed Jan. 25, 1991), contains the following explanation of both rules:

The dual status rule states that the existence of a nonpurchase money security interest in goods does not terminate a purchase money security interest in those goods, to the extent that the collateral continues to secure its own price. The rationale behind the dual status rule comes from the language of the U.C.C. § 9–107, which allows a purchase money

---

4. Unlike equipment such as that at issue here, no UCC filing is necessary to perfect a pur-

chase money security interest in consumer goods. § 36–9–302(1)(d).

security interest in goods "to the extent" that it secures the purchase price of the goods.

This is in contrast to what is known as the "Transformation Rule", which states,

[T]hat if collateral secures its own purchase price as well as the purchase price of other goods, the purchase money security interest existing prior to the "add on" contract is transformed into a non-purchase money security interest. The transformation rule, however, is typically applied in cases where neither the consolidated contract, nor state statute, allocates payments between the various debts. The policy underlying this rule is to prevent over-reaching creditors from retaining titled [sic] to all items covered under the consolidated contract until the last item purchased is paid for.

*Id.* at 7 (citations omitted).

Pursuant to the "dual status" rule, a creditor retains a purchase money security interest in goods that also secure other obligations to the extent the original items secure the unpaid part of their own price. Some courts reason that tolerance of cross-collateralization provisions carries out the purposes of the Uniform Commercial Code to give special priority to purchase money security interests and to simplify repeat transactions between the same buyer and seller. *See, e.g., Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797 (3rd Cir.1984).

Unable to find any law within the Fourth Circuit supporting the application of the "transformation" rule in a commercial context, BOA cites decisions within the Eleventh Circuit which do so. *See, e.g., ORIX Credit Alliance, Inc. v. Bank of Tuscaloosa (In re Brookwood Sand and*

*Gravel, Inc.)*, 174 B.R. 309 (Bankr. N.D.Ala.1994) and *Southtrust Bank of Alabama v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240 (11th Cir.1985).[5] A number of courts have rejected the Eleventh Circuit's approach, and have instead applied the "dual status" rule in the commercial context. *See, e.g., First Nat'l Bank of Boston v. Shugrue (In re Ionosphere Clubs, Inc.)*, 123 B.R. 166 (S.D.N.Y. 1991); *In re Express Air. Inc.*, 136 B.R. 328 (Bankr.D.Mass.1992); *John Deere Co. v. Production Credit Ass'n*, 686 S.W.2d 904 (Tenn.Ct.App.1984). The noted Uniform Commercial Code commentators, Professor James J. White and Professor Robert S. Summers, support the "dual status" approach as demonstrated by the following discussion of the *John Deere Co. v. Production Credit Association* case:

Unlike the court in *Southtrust [v. Borg–Warner ]*, the court here declined to follow the reasoning of *In re Manuel* [507 F.2d 990 (5th Cir.1975)] and other similar cases in the consumer bankruptcy context. It concluded that a creditor can be a purchase money lender irrespective of its cross-collateralization clause or the terms of its security agreement, provided it can show that its loan actually went for the purchase of the particular collateral covered by the financing statement and to the extent that it can show that only that part of the debt is being asserted on a purchase money basis against the particular collateral. We applaud the *John Deere* reasoning.

James J. White & Robert S. Summers, *Uniform Commercial Code Practitioner Treatise Series*, § 33–5 at 330 (4th ed. Supp.2000).

---

**5.** The Bankruptcy Court in *AmSouth Bank. N.A. v. Orix Credit Alliance, Inc. (In re Delta Resources, Inc.)*, 162 B.R. 562, 568 (Bankr. N.D.Ala.1993), noted that, "if [it] were writing on a clean slate ... it might well reject the transformation rule."

The proposed revisions to Article 9 of the Uniform Commercial Code, while not yet adopted in South Carolina, make clear that the "dual status" rule is the correct application in the commercial context. *See* Revised UCC § 9–103(e) and (f) and Official Comment 7.

BOA does not dispute that ORIX's security interests in the Disputed Collateral involve "purchase money" financing. The record in this case, including the Consent Order Approving Agreement Between Debtor and ORIX Financial Services, Inc. entered by this Court on April 4, 2001, demonstrates that the purchase money debt balances owed on each of the Disputed Collateral items exceed the values of the Disputed Collateral items. BOA has not raised any issues concerning ORIX's application of payments received by the Debtor. Accordingly, application of the "dual status" rule is appropriate under the facts of this case.

### CONCLUSION

The issue in this case is whether ORIX had, on file, a financing statement describing the Disputed Collateral by item *or* type when the Debtor obtained rights in the equipment or within 10 days thereafter. This Court concludes that it did. Orix also provided the purchase money financing that allowed K & P to acquire rights in the Disputed Collateral. The contracts by which K & P purchased the Disputed Collateral contained their own grant of a security interest in the equipment. Coupled with the Prior Financing Statements covering equipment, the purchase money security interests in the Disputed Collateral were automatically perfected at the moment K & P acquired rights in the equipment.

For the foregoing reasons, it is hereby

ORDERED that ORIX's motion for summary judgment is granted, and BOA's motion for summary judgment is denied. It is further

ORDERED that ORIX holds first priority perfected purchase money security interests in the Disputed Collateral.

**SO ORDERED.**