**In re AVAIR, INC., Debtor.**

**AVAIR, INC., Plaintiff,**

v.

**FAIRCHILD AIRCRAFT CORPORATION and Nashville Eagle, Inc., Defendants.**

**Bankruptcy No. 88–00036.**
**Adv. No. 88–0124.**

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

Dec. 22, 1988.

Richard E. Spies, Lynchburg, Va., for plaintiff/debtor.

M. Caldwell Butler, Roanoke, Va., for Fairchild Aircraft Corp.

William H. Schwarzschild, and James J. Burns, Richmond, Va., for Nashville Eagle, Inc.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON,
Bankruptcy Judge.

This case is before the court on the debtor's motion for summary judgment declaring Fairchild Aircraft Corporation's ("FAC") lien on certain airline property to be unperfected for FAC's failure to file appropriate documents with the Federal Aviation Administration, and therefore to be voidable pursuant to section 544 of the Bankruptcy Code (11 U.S.C. § 544). FAC responds that while a Federal Aviation Administration filing may be necessary to perfect a security interest in aircraft, such is not necessary with regard to aircraft spare parts. The gist of FAC's argument is that although Congress has pre-empted state law regarding perfection of security interests in aircraft and certain aircraft engines, it has not done so with regard to aircraft spare parts, and that FAC has a security interest (which it claims it perfected by Uniform Commercial Code filings) in spare parts not covered by the Federal Aviation Act (formerly the Civil Aeronautics Act). For the reasons discussed below, the court will grant the debtor's motion for summary judgment.

## FACTUAL BACKGROUND

The debtor, Avair, Inc., filed its chapter 11 petition on January 15, 1988. It had been operating as a commuter airline based in Campbell County, Virginia. FAC is an aircraft manufacturer. The debtor used FAC's Metro II and Metro III aircraft in its operation. Over a period of years, the debtor had purchased and/or leased Metro II and Metro III aircraft and related aircraft engines, propellers, appliances, and/or spare parts from FAC. Until June 1987, the spare parts inventory was located at Lynchburg Municipal Airport in Campbell County, Virginia. Subsequently as much as one sixth of the spare parts was transferred to another location in Raleigh, North Carolina.

FAC claims to have retained a security interest in this equipment, including the spare parts, pursuant to the sales and lease agreements. However FAC's security interest was not recorded with the Federal Aviation Administration ("FAA") in Oklahoma City, Oklahoma pursuant to the Federal Aviation Act. Nonetheless FAC has asserted the validity of its lien on such property, and on the proceeds resulting from the disposition of such property.

On February 2, 1988, the court entered an order granting FAC a security interest in any spare parts acquired by the debtor post-petition in order to replace pre-petition liens on spare parts used by the debtor during post-petition operations, "to the extent [FAC's] pre-petition liens or security interests were valid, perfected, enforceable, and non-avoidable." Later, on April 15, 1988, the court approved a sale to Nashville Eagle, Inc., free and clear of all liens, of certain of the debtor's spare parts, and ordered that any liens on the property sold would be transferred to the sale proceeds, and further ordered that the debtor place a sufficient amount of the proceeds into escrow to cover all claims asserted on them.

Subsequently, the debtor filed a complaint to determine the extent and validity of FAC's liens, amended the complaint to include Nashville Eagle, Inc. as a party, and has now filed this motion for summary judgment.

## DISCUSSION

The debtor, acting as a debtor in possession, has the same rights and powers as a trustee, with limited exceptions. 11 U.S.C. § 1107. This includes the power to avoid an unperfected security interest which would be voidable by a hypothetical judicial lien creditor. 11 U.S.C. § 544(a)(1). Under Virginia law, a lien creditor's rights are senior to those of a holder of an unperfected security interest. Va.Code § 8.9–301(1)(b). Therefore the debtor in possession may avoid FAC's security interest if it is unperfected. FAC does not dispute this but claims that it had in fact perfected its security interest in spare parts, a Garrett engine with serial number P44388, and a QEC kit (quick engine change kit) attached to the Garrett engine, by filing financing statements according to the provisions of the Uniform Commercial Code.

Section 503 of the Federal Aviation Act (49 U.S.C.App. § 1403) provides as follows:

(a) The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

(2) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any specifically identified aircraft engine or engines of seven hundred and fifty or more rated takeoff horsepower for each such engine or the equivalent of such horsepower, or any specifically identified aircraft propeller capable of absorbing seven hundred and fifty or more rated takeoff shaft horsepower and also any assignment or amendment thereof or supplement thereto;

(3) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any aircraft engines, propellers, or appliances maintained by or on behalf of an air carrier certificated under section 1424(b) of this title for installation or use in aircraft, aircraft engines, or propellers, or any spare parts maintained by or on behalf of such an air carrier, which instrument need only describe generally by types the engines, propellers, appliances, and spare parts covered thereby and designate the location or locations thereof; and also any assignment or amendment thereof or supplement thereto.

.     .     .     .     .

(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation. . . .

49 U.S.C.App. § 1403(a, c).

FAC recognizes the holding in *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983) that state laws allowing undocumented or unrecorded transfers of aircraft are pre-empted by section 503, and that section 503 requires "that every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected." FAC points out however that *Philko* concerned aircraft, not spare parts, and relied on legislative history of the 1938 version of the Act, which concerned aircraft but not spare parts, not the legislative history of the 1948 version of the Act,

which added spare parts to the types of collateral covered by the Act. Therefore, FAC claims that *Philko* is not applicable here, since the collateral at issue consists of spare parts.

*Philko* is indeed applicable. First, its rationale concerning mandatory section 503 FAA recording with respect to aircraft compels a similar conclusion concerning spare parts maintained by or on behalf of a certificated air carrier. Second, even considering the later 1948 amendments' legislative history, the intent of Congress does not appear to have been different regarding the filing requirement for covered spare parts.

In *Philko*, the Supreme Court decided that section 503(a)(1) of the Act "directs the Secretary of Transportation to establish and maintain a system for the recording of any 'conveyance which affects the title to, or any interest in, any civil aircraft of the United States.'" *Philko*, 462 U.S. at 409, 103 S.Ct. at 2478. The Supreme Court then interpreted subsection 503(c) to require the recording of every aircraft transfer because of that subsection's language that "no conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft ... [or spare parts ...] until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation." Section 503(a)(3) also directs that the FAA recording system include instruments evidencing security agreements affecting any interest in spare parts maintained by or on behalf of air carriers certificated under 49 U.S.C. App. § 1424(b). Thus subsection 503(c) also requires recording of every security agreement covering subsection 503(a)(3) collateral for perfection of such security interests.

Because section 503 requires the recordation of *every* transfer of an interest in aircraft, a conclusion mandated by the legislative history of the Act, the Supreme Court determined that "Congress must have intended to pre-empt any state law under which a transfer without a recordable conveyance would be valid against innocent transferees or lien holders who have recorded." *Philko*, 462 U.S. at 410, 103 S.Ct. at 2479. Such a law would be in direct conflict with section 503(c) and consequently would be pre-empted by the latter. *Id.* (citing U.S. Constitution, Art. VI, cl. 2; *Pacific Gas & Elec. v. Energy Resources Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 ("Even where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal law"); *Fidelity Federal Sav. & Loan v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) ("Even when Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent it actually conflicts with federal law")). As just stated, section 503 also requires the recordation of *every* instrument executed for security purposes affecting the title to or an interest in spare parts maintained by or on behalf of a certificated air carrier. 49 U.S.C.App. § 1403. Just as subsection (c) pre-empts conflicting state laws regarding transfers governed by subsection (a)(1), so it must with respect to conflicting state laws allowing valid security agreements covering subsection (a)(3) collateral without proper FAA filings. U.S. Const., Art. VI, cl. 2; *Pacific Gas & Elec. Co. v. Energy Resources Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983); *Fidelity Federal Savings & Loan v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *see Philko*, 462 U.S. at 410, 103 S.Ct. at 2478.

Furthermore, even given the additional legislative history accompanying the 1948 amendments to the Act, which, as FAC argues, indicates an intent to expand the available collateral base for airlines and aircraft manufacturers to the numerous spare parts that must be sold with the aircraft, the original legislative history of the 1938 Act is also still applicable. The Act's *overall* purpose is "to create 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal inter-

ests in an aircraft,'" and, since 1948, in engines, propellers, appliances, and spare parts that fall under § 503(a)(2) or (3). *See Philko,* 462 U.S. at 411, 103 S.Ct. at 2479 (quoting Hearings on H.R. 9738 before the House Committee on Interstate and Foreign Commerce, 75th Cong.3d Sess., 407 (1938) (testimony of F. Fagg, Director of Air Commerce, Dept. of Commerce)).

The court doubts that Congress would have expanded coverage of § 503 to spare parts maintained by or on behalf of a certificated air carrier without intending that they too be included in the national recordation scheme of that section and that conflicting state law be similarly pre-empted as to covered spare parts; the legislative history of the 1948 amendments so expansively recited by FAC certainly gives no hint of a contrary intent. In fact, part of the legislative history cited by FAC supports this conclusion. As pointed out by FAC at page 18 of its brief, H.R.Rep. No. 2165, 80th Cong., 2d Sess. 1 (1948) states in part:

This bill would provide a system for the recordation of liens on large aircraft engines and on spare parts used by air carriers. The Civil Aeronautics Act now provides that the Administrator maintain a system for the recordation of all conveyances affecting title to, or interest in, aircraft of the United States. That system has been in operation successfully for 10 years, but does not permit the recordation of liens on aircraft engines or spare parts maintained for installation in aircraft. *This bill would broaden the present provisions to permit that type of recordation.*

(Emphasis added). Later in that same report is a section by section explanation of the amendments which states:

The phrase 'or other instrument executed for security purposes' is included in [subsections (a)(2) and (a)(3)] to make clear that any instrument conveying or retaining title limited in extent to secure the performance of an act or the payment of a debt which affects the title to, or interest in, aircraft engines, aircraft propellers, appliances or spare parts, as limited by this section shall be included

in the provisions of this section. *Such instruments must be recorded* with the Civil Aeronautics Administrator *to be valid as to third persons without notice pursuant to section 503(c).*

. . . . .

Subsection 503(c) provides that a conveyance or instrument which could be recorded as provided in section 503(a) shall be invalid with respect to third persons without notice unless recorded as provided in this bill. *This extends the rule now in effect with respect to conveyances affecting title to, or interest in aircraft to the instruments recordable under the new legislation.*

H.R.Rep. No. 2165, 80th Cong.2d Sess. 3 (1948) (emphasis added). These passages imply an intent that the amended section 503 apply to both aircraft and spare parts in the same manner with respect to validity of instruments not filed under the national recordation system. Therefore the legislative history relied on by the Supreme Court in *Philko* also applies in this case.

The final question is whether the collateral at issue falls within the ambit of section 503(a)(3). FAC does not dispute that the collateral consists of numerous spare parts as defined by the Act, and the Garrett engine. FAC concedes that an FAA filing was necessary for the Garrett engine, and also that the QEC kit attached to the Garrett engine is a spare part. (The debtor maintains that since the QEC kit is attached to the engine it is part of the engine, not a spare part. Either way the result is the same.) Section 503(a)(3) covers "any aircraft engines, propellers, or appliances maintained by or on behalf of an air carrier certificated under section 1424(b) of this title for installation or use in aircraft, aircraft engines, or propellers, or *spare parts maintained by or on behalf of such an air carrier*". 49 U.S.C.App. § 1403(a)(3) (emphasis added). The instrument to be recorded "need only describe generally by types the engines, propellers, appliances, and spare parts covered thereby and designate the location or locations thereof." *Id.*

There is no dispute that the spare parts at issue here were spare parts maintained by or on behalf of Avair, or that Avair is an air carrier certificated under 49 U.S.C. App. § 1424(b). Consequently, these spare parts are covered by the Act, and in order to perfect a security interest in them FAC needed to file appropriate documents with the FAA. Since it did not, its security interest in the spare parts is unperfected. *Philko*, 462 U.S. 406, 103 S.Ct. at 2477; 49 U.S.C.App. § 1403.

FAC has asserted that before a security agreement covering spare parts can be subject to the Act's filing requirements, it must meet several requirements beyond being maintained by or on behalf of a certificated air carrier. First, it claims that since sub-section 503(a) requires that the instrument describe the spare parts generally by type and designate their location, security agreements not evidenced by an instrument which does both are exempt from the filing requirements. Next, it claims that subsections 503(d) and (f) require that the spare parts must in fact be located at a designated location, and that they not be moved, and that therefore if these requirements are not met no documents need be filed with the FAA.

The court is not persuaded by FAC's arguments. The only test is whether the collateral consists of spare parts maintained by or on behalf of a certificated air carrier. Security agreements affecting such *collateral* must be filed with the FAA. The additional requirements that the *instrument* describe the general types of the collateral and designate their location have no bearing on whether documents must be filed. Rather they simply affect what must be in the documents.

This conclusion is also supported by the legislative history of the 1948 amendments. Another portion of H.R. Report No. 2165, which FAC also cited, states:

> Subsection (a)(3) provides for the establishment and maintenance of a system for the recordation of the designated liens upon spare parts, aircraft engines and propellers. *It would be unnecessary under these provisions to identify each item individually.* Only a general description of the type of property covered and a designation of its location would be necessary. *Such descriptions of property together with designations of locality have been accepted as adequate descriptions in liens by Federal and State courts.* [Citations omitted.]

H.R.Rep. No. 2165, 80th Cong., 2d Sess. 3 (1948) (emphasis added). FAC emphasized the sentence between the two emphasized here, to make the point that a designation of collateral type and location is necessary. But that sentence must be read in the context of those before and after it.

The quoted language, taken as a whole, indicates that type and location of the collateral are mentioned in subsection 503(a)(3) only to make clear that *more* specificity is not necessary. The language of the statute itself also makes this clear: "[the] instrument *need only* describe generally by types the engines, propellers, appliances, and spare parts covered thereby and designate the location or locations thereof ..." 49 U.S.C.App. § 1403(a)(3) (emphasis added). Such wording is meant to set a limit on requirements concerning definition of covered collateral, not to remove collateral from coverage under the statute.

While the court is sympathetic to the problem posed by the ability of a debtor to move the collateral, that consideration does not affect the status of the collateral: spare parts maintained by or on behalf of a certificated air carrier. The fact that spare parts might be moved to a location not designated in the security instrument that must be filed with the FAA presents a question not before the court, because no documents were ever filed with the FAA, and the agreement never had validity against third parties. Even though in this case some of the collateral was moved, that part still consisted of spare parts maintained by or on behalf of a certificated air carrier, and the court will not treat it differently.

FAC's claim that since the instrument granting the security interest did not designate the location or type of collateral prop-

erly it was not drafted to meet the eligibility requirements for filing with the FAA may be true, but does not relieve it from the consequences of not filing properly drafted documents. As stated above, the requirement in section 503(a)(3) that the document evidencing the transfer describe the spare parts generally by type and designate their location concerns only the necessary substance of the document to be filed; it is not part of the determination whether the collateral is covered by the Act and an appropriate document need be filed. If, as FAC suggests, individuals could avoid the filing requirements for security agreements dealing with spare parts maintained by or on behalf of a certificated air carrier simply by drafting their documents in vague, improper form, the primary goal of the Act to provide a centralized filing system for aircraft-related collateral would be subverted. *Philko* supports this conclusion since, for the same reason, it rejected the assertion that transfers evidenced by no document do not come under the statute.

Accordingly, the court will enter an order granting the debtor's motion for summary judgment. The remaining issues need not be addressed save one. Nashville Eagle, Inc. filed a brief in support of the debtor's motion, in which it asked the court to order a distribution from the escrowed proceeds to Nashville Eagle, Inc. if the court should decide to grant the debtor's motion. However, this court's previous order dated April 15, 1988, which provided for the escrow account, also provided that no distribution of the escrowed proceeds may occur other than "by order of this Court either properly endorsed by the debtor, the attorney for the unsecured creditors committee, those claiming a lien against or property interest in the Escrowed Proceeds, and the U.S. Trustee, or in the alternative by order of this Court pursuant to five days notice to [those same parties]". Neither condition has been satisfied, nor has the motion for summary judgment actually before the court even addressed such a distribution. Therefore the court will not grant Nashville Eagle's request at this time.