**In re EXPRESS AIR, INC., Debtor.**

**Bankruptcy No. 91–17378–WCH.**

United States Bankruptcy Court,
D. Massachusetts, E.D.

Feb. 3, 1992.

Andrew Schultz, Field & Schultz, Boston, Mass., for Worcester County Inst. for Sav.

## OPINION AND ORDER ON MOTIONS OF WORCESTER COUNTY INSTITUTION FOR SAVINGS

WILLIAM C. HILLMAN, Bankruptcy Judge.

Worcester County Institution for Savings ("WCIS") filed two motions herein seeking to obtain possession of three aircraft. The first sought relief from stay pursuant to 11 U.S.C. § 362 and the second for delivery of collateral under 11 U.S.C. § 1110. By agreement the motions were heard and argued together and this opinion and order is applicable to both.

The present dispute requires consideration of the following questions as to each aircraft: Is WCIS entitled to relief under § 1110 and if not, has WCIS established that it is entitled to relief under § 362(d)?

The three aircraft are all Cessnas, Model 402C, and are distinguished by their registration numbers, 341FX, 160PB, and 125PB. It is necessary to consider them separately in the first instance.

The debtor purchased 341FX from Maine Aviation Corporation in 1989. WCIS provided the financing for the transaction. It is undisputed that the funds advanced by WCIS were used for the acquisition. Debtor simultaneously granted a security interest in 341FX to WCIS which was properly filed and recorded with the Federal Aviation Agency.

The situation with 160PB is somewhat more complex.

Mr. Foster R. Herman ("Herman") had acquired an interest in debtor and wished to acquire more aircraft for it. Herman testified that, after consultation with an officer of WCIS, it was determined that Herman would purchase 160PB in his own name and it would be financed by WCIS. This was accomplished. WCIS provided Herman with the funds which were used to acquire the aircraft in his name and Herman simultaneously granted a security interest in the plane to WCIS. The security agreement was duly filed and recorded

Peter Staiti, New Bedford, Mass., for debtor.

with the FAA. It reflects an amount of $172,000.00.

Subsequently it was decided by agreement of Herman and WCIS that title to 160PB should be transferred to debtor's name, and that act was accomplished in December, 1990. While the existing security interest to WCIS was never discharged, a new security agreement was granted by the debtor to WCIS in the amount of $175,570.04 and duly filed and recorded. WCIS makes no claim under the earlier security agreement. Herman testified that the higher amount represented incorporation into the indebtedness secured by 160PB of a "bridge loan" previously granted to him to aid in the acquisition of this aircraft. This is consistent with the evidence offered by WCIS.

The transactions involving 125PB paralleled those with 160PB with the following further complications. First, title was originally taken in the names of Herman and John Fernandez ("Fernandez") who together granted the original security interest to WCIS in the amount of $120,000.00. Fernandez was also involved in the ownership or management of debtor. The transfer of title from Herman and Fernandez to the debtor, subject to the WCIS security interest, was on January 15, 1991, at which time WCIS filed a new security agreement with the FAA, stating an amount of $166,551.75. To further confuse the situation, the title records indicate a security interest granted by debtor to Michael Josepak ("Josepak") filed immediately prior to the second WCIS security interest, but dated November 12, 1990, at which time the debtor did not yet own the aircraft. Josepak claims $16,053.00.

11 U.S.C. § 1110 applies only to aircraft, aircraft engines, propellers, appliances, or spare parts, as such terms are defined in § 101 of the Federal Aviation Act of 1958, 49 U.S.C. § 1301. As applicable to this case § 1110 provides:

> (a) The right of a secured party with a purchase-money equipment security interest in ... aircraft, aircraft engines, propellers, appliances, or spare parts ... that are subject to a purchase-money equipment security interest granted by ... a debtor that is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board ... to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement ... is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—
>
> (1) before 60 days after the date of the order for relief under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor due on or after such date under such security agreement ...; and
>
> (2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement ...—
>
> (A) that occurred before such date is cured before the expiration of such 60-day period; and
>
> (B) that occurs after such date is cured before the later of—
>
> (i) 30 days after the date of such default; and
>
> (ii) the expiration of such 60-day period.
>
> (b) The trustee and the secured party ... whose right to take possession is protected under subsection (a) of this section may agree, subject to the court's approval, to extend the 60-day period specified in subsection (a)(1) of this section.

As can be seen, the application of § 1110 is contingent upon (a) a particular type of equipment, (b) a particular type of transaction, and (c) a licensed debtor. If those elements are found to exist, it is necessary to consider whether the secured party has a right to immediate possession under the loan documents.

There is no issue as to the fact that all of the aircraft involved in this case fit the statutory definition of aircraft, etc., and it is admitted that the debtor is licensed, albeit that the licensing authority was transferred by Congress to the Department of

Transportation effective January 1, 1985. The remaining initial question is whether the bank has a purchase money security interest.

■ The Bankruptcy Code does not contain a definition of a "purchase-money equipment security interest" ("PMESI"). The Court finds that Congress intended the Uniform Commercial Code ("UCC") definitions of "purchase money security interest"[1] and "equipment"[2] to apply. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 240 (1977); G. Gerstall and K. Hoff–Patrinos, *Aviation Financing Problems Under Section 1110 of the Bankruptcy Code*, 61 Bankr.L.J. 1, 10 (1987).

As applicable to the facts in this case, UCC §§ 9–107 and 9–109(2) combine to create a definition of a PMESI as

a security interest in equipment to the extent that it is taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

The Court finds that the planes are equipment; that WCIS gave value to enable the original purchasers to acquire the equipment; and that such value was in fact so used.

It is conceded that, as to 341FX, the original purchase money financing transaction has not been altered. The Court finds that § 1110 will apply to that plane. Whether WCIS has a right to immediate possession will be discussed subsequently.

Before doing so, however, the Court must consider whether the later transac-

tions involving the other two aircraft destroy the PMESI character of the current security documentation.

The parties variously characterize the transfer of title and new security documentation as a sale or a refinancing. Debtor further contends that, whatever the nature of that transfer, the PMESI credentials have been lost.

■ A determination that the later loan was a mere refinancing requires a finding that, as a matter of law, the original title holders were merely that, and that the debtor was the owner of the aircraft *ab initio*. There is evidence to support such a holding.[3]

Assuming *arguendo* that debtor was in law the owner of the aircraft at all relevant times, and setting aside the issues raised by the bridge loan, the relationship between debtor and WCIS was and remains PMESI financing. *See In re Continental Airlines, Inc.*, 932 F.2d 282, 292–93 (3d Cir.1991).

On the other hand, if the transfer of title from the individual owners to debtor was a sale, the focus must change from the original financing to the second series of security interests. Under this view of the law, and once again leaving aside for the moment the issue of the bridge loan, WCIS did, through the medium of the second financing transaction, provide the purchase money financing for the debtor to acquire its rights in the planes. This can be a purchase money transaction. It parallels the sale-and-lease-back transaction ap-

---

1. "A security interest is a 'purchase money security interest' to the extent that it is
    (a) taken for retained by the seller of the collateral to secure all or part of its price; or
    (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." UCC § 9–107.
    The Court will use the 1990 Office text of the UCC as its source for statutory language, no suggestion having been made that any local variant is relevant.

2. "Goods are ... (2) 'equipment' if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who

is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods." UCC § 9–109.

3. Debtor's post-trial memorandum states:
    "It is clear from the testimony before the court that [WCIS] always considered itself dealing with Express Air, Inc. The bank insisted that title be taken by [Herman] in two of the aircraft for its convenience in showing a more credit-worth [sic] purchaser. When they refinanced said aircraft in December of 1990, the bank decided to do away with the fiction and prepared documents of transfer which, significantly, recite no consideration."

proved as a PMESI in *In re Continental Airlines, Inc., supra.* To the extent that *In re Braniff, Inc.,* 110 B.R. 980, 984 (Bankr.M.D.Fla.1990), contains dicta applicable to non-lease transactions contrary to this view it is rejected.

Thus it is not necessary to determine which theory is correct. In either case the financing in place satisfies the PMESI test, subject, once again, to any complications caused by the bridge loan, for even if the proceeds of the bridge loan were used to acquire the aircraft, no security interest was granted to secure that sum, and the bridge loan was not itself a PMESI.

■ This brings us to the penultimate issue to be resolved: Does a PMESI lose its character as such if an additional non-PMESI sum is incorporated in a "re-writing" of the original financing transaction, or as part of the original transaction? The courts are widely divided.

Professor Lloyd has set out the history and status of the problem in two comprehensive articles, R. Lloyd, *Refinancing Purchase Money Security Interests,* 53 Tenn.L.Rev. 1 (1985) ("Lloyd I"), and R. Lloyd, *Consolidated and Refinanced Purchase Money Loans under the Bankruptcy Code and the Uniform Commercial Code,* 45 Cons.Fin.L.Q.Rep. 69 (Winter, 1991) ("Lloyd II"). He points out that courts are currently using three different theories to analyze the posited issue:

1. The transformation rule, which holds that a single security interest cannot secure both purchase money debt and non-purchase money debt;

2. The novation theory, holding that any refinancing of a purchase money security interest destroys the purchase money status; and

3. The dual status rule holding that a single security interest can in fact secure both purchase money and non-purchase money debt. Lloyd II at 70–72.

He concludes that "the majority of recent cases of first impression have adopted some form of the dual status rule." Lloyd II at 73.

The Court will join with the last described cases and adopt the dual status rule for two reasons. First, because it is consistent with pre-UCC law which held "that neither refinancing nor commingling purchase money debt with nonpurchase money debt would destroy the purchase money character of the original debt," Lloyd I at 37; *Burns v. Thayer,* 101 Mass. 426 (1869), and there is nothing in the UCC to indicate that a change was intended. Second, and supportive of the first point, to rule otherwise would mean rewriting the first phrase of UCC § 9–107. It now begins "a security interest is a 'purchase money security interest' *to the extent that it is* ..." To decide otherwise would have it read "a security interest is a 'purchase money security interest' *if it is....*"

Having found that the refinanced debt would qualify as a purchase money security interest under the UCC, and that the planes are equipment, the Court holds that WCIS' interest in the planes is PMESI under § 1110 of the Bankruptcy Code, to the extent that it represents the original financing with appropriate charges.

■ It now remains to consider whether WCIS has a right to immediate possession of the aircraft as required by 11 U.S.C. § 1110(a).

Debtor claims most strenuously that it is fully current in its obligations to WCIS. The evidence does not support that view.

Taking all of the evidence introduced at the interpretation most favorable to debtor, it is still evident that defaults in payment existed and continue to exist. Throughout the testimony of Mr. Franchetti, custodian in recent months of debtor's financial affairs, runs the them that debtor was trying to catch up. Unfortunately, the race and over and debtor has lost.

The Court finds that WCIS has a right to immediate possession of the aircraft under 11 U.S.C. § 1110.

Having reached that conclusion, it is unnecessary for the Court to consider the additional issues involved in the motion for relief from the automatic stay, which is denied as moot. "Once § 1110's explicit

conditions are met, a court may not impose further conditions on a creditor's exercise of the rights which the statute provides." *In re Ionosphere Clubs, Inc.*, 123 B.R. 166, 169 (S.D.N.Y.1991).