**In re VANGUARD AIRLINES, INC., Debtor.**

**Vanguard Airlines, Inc., Plaintiff,**

**v.**

**International Aero Components, Inc., and GMAC Commercial Credit, LLC, Defendants.**

**Bankruptcy No. 02–50802–JWV. Adversary No. 03–04021–JWV.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

July 25, 2003.

David D. Ferguson, Kansas City, MO, for Debtor/Plaintiff.

James D. Lawrence, Tammee E. McVey, Kansas City, MO, for Defendants.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

In this Adversary Proceeding, the Court has before it a Motion for the repossession of spare aircraft parts and equipment pursuant to Section 1110 of the Bankruptcy Code. This is an issue of apparent first impression in this District and in the Eighth Circuit.

On April 15, 2003, International Aero Components, Inc. ("IAC") and GMAC Commercial Finance, LLC ("GMAC")[1] filed a joint motion seeking an order to compel Vanguard Airlines, Inc. ("Debtor") to abandon property under § 544 of the Bankruptcy Code and seeking authorization to repossess collateral under § 1110.

11 U.S.C. §§ 544, 1110. The Debtor and the Official Committee of Unsecured Creditors ("Committee") contended that IAC did not have the right to repossess the aircraft equipment because: a) IAC's assertion of rights under § 1110 was barred due to IAC's failure to timely raise the issue as an affirmative defense; b) IAC's unperfected interest was avoidable under § 544(a) and IAC needed to have a perfected security interest before utilizing the repossession provisions of § 1110;[2] and c) IAC's request for relief was repugnant to the interests of equity and did not comport with constitutional due process requirements.[3] The interrelationship between § 544(a) and § 1110 of the Bankruptcy Code ("Code") is a matter of first impression in the Eighth Circuit. On May 21, 2003, the Court heard oral arguments, and after consideration of the pleadings, arguments of the parties, and relevant law, the Court is now prepared to rule.[4]

## I. BACKGROUND

The Debtor is an air carrier operating under Federal Aviation Administration

---

1. Hereinafter the interests of IAC and GMAC are collectively referred to as "IAC."

2. On January 8, 2003, the Debtor filed an objection to IAC's Proof of Claim and filed a counterclaim for avoidance of IAC's interest in the Debtor's aircraft equipment. Because the Debtor's counterclaim and IAC's Motion to Compel concern the same issues, this Memorandum Opinion and Order adjudicates both Adversary No. 03–04021 and IAC's Motion to Compel.

3. The Debtor and the Committee also argued in their respective replies to IAC's Motion under § 1110 that IAC was not a secured party, lessor, or conditional vendor, but was an equity investor not entitled to the protections of § 1110. In a subsequently filed joint stipulation between IAC, GMAC, and the Debtor, the parties agreed that they would not submit any evidence at the May 21, 2003 hearing regarding whether IAC's loan should be recharacterized or equitably subordinated. The parties also stipulated that the transac-

tion between IAC and the Debtor was a conditional sale. Thus, by submitting the issue of whether § 544 may be used to avoid an unperfected security interest under § 1110, the Court finds that the parties are barred from subsequently seeking to recharacterize IAC's interest. Otherwise, the Court would be rendering a mere advisory opinion, because if the parties were allowed to later recharacterize IAC's interest to show it was not a party entitled to utilize the provisions of § 1110, no case or controversy would exist in this matter. *See* U.S. Const. Art. 3 § 2; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (stating that a controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a).

regulations. On December 29, 2000, the Debtor entered into a transaction with IAC, titled "Inventory Sale, Repurchase and Use Agreement," whereby the Debtor sold aircraft parts to IAC and simultaneously repurchased those assets from IAC on a fixed payment schedule. The written agreement provided that IAC had the right to take possession of the aircraft parts in the event the Debtor defaulted. IAC did not perfect its security interest in the aircraft equipment by recording its interest with the Federal Aviation Administration or by filing a UCC–1 financing statement. The Debtor defaulted on the agreement and filed for Chapter 11 relief on July 30, 2002. The Debtor did not cure its default after filing for bankruptcy. IAC filed its Proof of Claim on November 8, 2002, asserting that it had a security interest in the Debtor's aircraft parts. The Debtor filed an adversary proceeding, No. 03–04021, on January 8, 2003, alleging,

*inter alia,* that IAC's proof of claim was deficient. Additionally, the Debtor filed a counterclaim to IAC's Proof of Claim, seeking avoidance of IAC's unperfected security interest under § 544. In response, IAC filed an amended Proof of Claim and an Answer to the Debtor's adversary complaint on February 6, 2003, neither of which mentioned IAC's rights under § 1110. On April 9, 2003, IAC sent the Debtor a written demand to surrender and return the aircraft parts pursuant to § 1110. The Debtor refused IAC's request, and on April 23, 2003, sought leave in the adversary proceeding to amend its pleadings to show that IAC was not entitled to relief.

## II. DISCUSSION

### A. Failure to Raise § 1110 as an Affirmative Defense [5]

■ The Committee argues that IAC was prohibited from asserting its rights

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7052.

5. The provisions of § 1110 that are particularly pertinent here are subsections (a)(1) and (c), which provide:

(a) (1) Except as provided in paragraph (2) and subject to subsection (b), the right of a secured party with a security interest in equipment described in paragraph (3), or of a lessor or conditional vendor of such equipment, to take possession of such equipment in compliance with a security agreement, lease, or conditional sale contract, and to enforce any of its other rights or remedies, under such security agreement, lease, or conditional sale contract, to sell, lease, or otherwise retain or dispose of such equipment, is not limited or otherwise affected by any other provision of this title or by any power of the court.

. . . . .

(c) (1) In any case under this chapter, the trustee shall immediately surrender and return to a secured party, lessor, or condition-

al vendor, described in subsection (a)(1), equipment described in subsection (a)(3), if at any time after the date of the order for relief under this chapter such secured party, lessor, or conditional vendor is entitled pursuant to subsection (a)(1) to take possession of such equipment and makes a written demand for such possession to the trustee.

(2) At such time as the trustee is required under paragraph (1) to surrender and return equipment described in subsection (a)(3), any lease of such equipment, and any security agreement or conditional sale contract relating to such equipment, if such security agreement or conditional sale contract is an executory contract, shall be deemed rejected.

11 U.S.C. § 1110(a)(1), (c).

under § 1110 to repossess collateral because it failed to raise § 1110 as an affirmative defense in a timely manner. Fed. R.Civ.P. 8(c), made applicable to bankruptcy adversary proceedings under Fed. R. Bankr.P. 7008, provides that in "pleading to a preceding pleading, a party shall set forth affirmatively any ... matter constituting an avoidance or an affirmative defense." A party waives an affirmative defense by a failure to timely raise it in the pleadings. *Sartin v. Commissioner of Public Safety,* 535 F.2d 430, 433 (8th Cir. 1976).

■ Significantly, § 1110 sets out several prerequisites before a party is entitled to the protection of its provisions. Section 1110(a) provides that the provision only applies to "(a) a particular type of equipment, (b) a particular type of transaction, and (c) a licensed debtor." *In re Express Air, Inc.,* 136 B.R. 328, 330 (Bankr.D.Mass.1992). Once a creditor meets the prerequisites to utilize the protections of § 1110, the creditor is required to make a written demand for possession before the trustee must surrender the collateral. 11 U.S.C. § 1110(c)(1). Thus, subsection (a) provides the specific class of creditors that is entitled to use § 1110, and subsection (c) provides the method for enforcing the creditors' rights under the statute.

■ Section 1110(a)(1) also states that the rights of a creditor are "not limited or otherwise affected by any other provision of this title or by any power of the court." 11 U.S.C. § 1110(a)(1). Thus, § 1110 would constitute an avoidance of the Debtor's counterclaim that IAC's unperfected security interest was usurped by the Debt-

or's hypothetical lien under § 544(a)(1). Regardless of IAC's failure to raise § 1110 as an affirmative defense to the Debtor's counterclaim filed in Adversary No. 03–04021, the Court may allow amendments to pleadings under Fed. R. Bankr.P. 7015. Leave to amend is freely given when justice requires. § 7015(a). Also, when issues not raised in a pleading are tried by the express or implied consent of the parties, they are treated in all respects as if they had been raised in the pleading. § 7015(b).

■ In this case, the Debtor filed an objection to IAC's Proof of Claim on January 8, 2003; IAC filed an Answer on February 7, 2003, without mentioning § 1110 as an affirmative defense; and IAC sent the Debtor a written demand to surrender the aircraft equipment pursuant to § 1110 on April 9, 2003. Rather than objecting that IAC had failed to raise § 1110 as an affirmative defense, the Debtor sought leave to amend its counterclaim against IAC. In its request, the Debtor specifically acknowledged that IAC's assertion of rights under § 1110 was "a new, previously unpleaded defense to [the Debtor's] counterclaim." [6]

In light of this procedural history, we find: 1) that the Debtor is not prejudiced by allowing IAC to amend its answer to include § 1110 as an affirmative defense to the Debtor's counterclaim, and 2) that IAC's assertion of rights under § 1110 is treated in all respects as if it were raised in its Answer to the Debtor's adversary proceeding because the issue was tried by the express or implied consent of the parties. Therefore, Rule 7008 is not a bar to IAC's assertion of rights under § 1110.

---

6. The Debtor sought leave to amend its counterclaim to show that IAC's security interest should be recharacterized as an equity contribution rather than a *bona fide* extension of credit. As explained *supra,* n. 3, IAC and the Debtor stipulated that the transaction between them was a conditional sale and no evidence would be submitted at the hearing to show that IAC's loan should be recharacterized or equitably subordinated.

## B. Interrelationship Between §§ 544 and 1110

 Section 1110 expressly provides, with certain exceptions, that a secured party has a right to pursue aircraft equipment in accordance with an underlying agreement in the event a debtor files a petition under Chapter 11 of the Code. 11 U.S.C. § 1110. The rights of the secured party are "not limited or otherwise affected by any other provision of this title or by any power of the court." § 1110(a)(1). The trustee "shall immediately surrender ... [aircraft] equipment ... if at any time after the date of the order for relief ... such secured party ... makes a written demand for such possession to the trustee." § 1110(c)(1). Congress created this provision of the Code in 1978 in an effort to protect a limited class of aircraft financiers, and the provisions of § 1110 are narrowly construed to prevent parties from gaining the protections of the statute unless their interests are specifically enumerated. Reform Act of 1978, 124 Cong. Rec H11102–03 (daily ed. Sept. 28, 1978); S17419 (daily ed. Oct 6, 1978); remarks of Rep. Edwards and Sen. DeConcini. As part of the Wendall H. Ford Aviation Investment and Reform Act for the 21st Century, Pub.L. 106–184, § 744 (April 5, 2000), § 1110(a)(1) was amended to make "clear" that a secured party, lessor, or conditional vendor had the power to enforce any of its rights and remedies— pursuant to the underlying agreement— and that those rights were not affected by any provision of the Bankruptcy Code. Editors' Comment, NORTON BANKRUPTCY RULES PAMPHLET 2002–2003 EDITION, p. 1065.

 The purpose of § 544 of the Code is to aid the trustee in recovering property of the estate for the eventual benefit of all creditors. 11 U.S.C. § 544 (2003); COLLIER ON BANKRUPTCY ¶ 544.01 (15th ed.2003). Section 544 powers represent a trade-off in that unsecured creditors are given the right to have all property brought into the estate which could have been available to them on the day the bankruptcy was filed, in exchange for having their debts discharged. *In re Weiman,* 22 B.R. 49, 56 (9th Cir. BAP 1982) (Katz, dissenting).

 In interpreting the Code, the Supreme Court directed that a court should first look to the plain meaning of the language, and if the intent of Congress is clear, the court must give effect to the unambiguous intent of Congress. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (stating that "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'"). *See also United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that when the statute's language is plain the sole function of the court is to enforce it according to its terms). All words and phrases used in the statute should be given effect, *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955), and inquiry under the plain language rule of statutory interpretation requires examining the text of the statute as a whole to consider its context, object, and policy. *Harmon Industries, Inc. v. Browner,* 191 F.3d 894, 899 (8th Cir.1999) (quoting *Pelofsky v. Wallace,* 102 F.3d 350, 353 (8th Cir.1996)). A strong presumption exists that Congress expressed its intended purpose through the language of the statute. *Ardestani v. INS,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 520, 116 L.Ed.2d 496, 505 (1991). Where the statute is clear, the court should look to the legislative history only if Congress expressed a

legislative intention contrary to the plain language of the statute. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Also, if an ambiguity exists the court may resolve the issue by an examination of statutory history. *Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992). An "ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1178 (10th Cir.2002) (quoting 2A Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION, § 45.02, at 11–12 (6th ed.2000)). Under the doctrine of *expressio unius est exclusio alterius*, the inclusion of one expression is an implicit exclusion of other expressions. *Hartford Underwriters Insurance Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)*, 177 F.3d 719, 723 (8th Cir.1999), *aff'd sub. nom. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). Furthermore, the more specific provisions of one statute should take precedence over the more general provisions of another. *Missouri v. Ross*, 299 U.S. 72, 76, 57 S.Ct. 60, 81 L.Ed. 46 (1936); *Willison v. Race*, 192 B.R. 949, 954 (W.D.Mo.1995).

Here, the statute provides:

> Except as provided in paragraph (2) and subject to subsection (b), the right of a secured party with a security interest in equipment described in paragraph (3), or of a lessor or conditional vendor of such equipment, to take possession of such equipment in compliance with a security agreement, lease, or conditional sale contract, and to enforce any of its other rights or remedies, under such security agreement, lease, or conditional sale contract, to sell, lease or otherwise retain or dispose of such equipment, is not limited or otherwise affected by any other provision of this title or by any power of the court.

11 U.S.C. § 1110(a)(1).

Significantly, subsection (a)(1) provides that the ability of a secured party, lessor, or vendor *"is not limited or otherwise affected by any other provision of this title or by any power of the court."* Reference to "this title" means Title 11 of the United States Code. Fed. R. Bankr.P. 9001(2). "Power of the court" is defined in 11 U.S.C. § 105, and includes the power of the court to prohibit parties from pursuing their rights in state court. *See generally Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 571 (S.D.N.Y.1987) (relying on § 105(a) for the bankruptcy court's power to enjoin a state court action that threatened to interfere with the administration of the estate). *See also* H.R. Rep. 595, 95th Cong., 2d Sess. (1978), reprinted in 1978 U.S.C.C.A.N. 6273, 6274 (indicating that § 105 authorizes a court of the United States to stay a state court action). Thus, under the plain language of the statute, IAC has the right to take possession of the collateral pursuant to its agreement with the Debtor, and that right is not limited or otherwise affected by any other provision of the Code, or by any power of the court.

The legislative history of § 1110 provides further support demonstrating that the statute means what it says. Prior to the 2000 amendments, § 1110(a)(1) provided that the underlying agreement was "not affected by section 362, 363, or 1129, or by any power of the court to enjoin the taking of possession ...." In 2000, Congress changed the wording of the statute, expressly deleting the limiting references to §§ 362, 363, and 1129 in favor of the all-inclusive language, "any other provision of this title." Pub.L. 106–181, Title VII § 744(b). Thus, any argument for *expres-*

*sio unius est exclusio alterius* that existed prior to 2000—i.e., that § 544 was not limited by § 1110 because § 544 was not specifically mentioned—certainly cannot prevail after the amendments. Indeed, under the rules of statutory construction, the more specific provisions in § 1110—which concerns the relationship between a specific chapter, a specific class of creditors, and specific collateral—should take precedence over the more general provisions in § 544.[7]

This Court is not the first to examine the interrelationship between §§ 544 and 1110 of the Code.

In the case of *California Chieftan v. Air Vermont, Inc. (In re Air Vermont, Inc.)*, 761 F.2d 130, 130–31 (2nd Cir.1985), the Second Circuit overturned a bankruptcy court's determination that California Chieftan's unperfected security interest in an aircraft was voidable under § 544, and that California Chieftan was not allowed to pursue the collateral pursuant to § 1110. The bankruptcy court had reasoned, in part, that: 1) the legislative history of § 1110 did not stand for the proposition that the holder of an unperfected security interest was to be afforded the same or more rights than a perfected secured creditor; and 2) that if Congress had wanted § 1110 to override § 544 then it would have specifically included § 544 when it specifically listed §§ 362 and 363 as not applicable in a § 1110 proceeding. *Id.* at 132–34. In reversing the bankruptcy court's determination, the Second Circuit determined: 1) the legislative history indicated that Congress intended "to extend extraordinary protection to financiers of aircraft in order to encourage investment" by granting creditors the power to repossess aircraft without the usual protections afforded to a debtor or trustee in a Chapter 11 proceeding; and 2) § 1110 did not specifically require that a party perfect an interest, and the statute was unambiguous in allowing a creditor to repossess once the elements of § 1110 were satisfied. Thus, the statute's literal meaning must be applied without a superimposed recording requirement. *Id.*

The Debtor urges the Court not to follow the reasoning of the Second Circuit in *Air Vermont,* and the Debtor astutely notes that the decision has been widely criticized by commentators.[8] The mere

---

7. Section 546 of the Code specifically provides limitations on the avoiding powers of § 544. 11 U.S.C. § 546. Significantly, § 546 never mentions § 1110 as a limitation to § 544. *Id.* In oral arguments, the Debtor relied on § 546 as an example of how Congress would choose to exempt unperfected aircraft equipment interests under § 1110 from avoidance by § 544. The Court only notes that the language used by Congress in § 1110—that a party's rights are not "limited or otherwise affected by any other provision of this title or by any power of the court"—is also specific, and it relates to a specific class of creditors, to specific collateral, and to a specific chapter of the Code. The fact that Congress carved out a blanket exception for the limited class of creditors in § 1110 does not conflict with or disturb the overall function of the Code. *See infra,* Part C. *See also Crandon v. United States,* 494 U.S. 152, 158,

110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) (stating that in construing a statute a court should "look not only to the particular statutory language, but to the design of the statute as a whole, to its object and policy.").

8. The Debtor cites the following secondary sources as supporting its position that *In re Air Vermont* was wrongly decided:

Glenn A. Gerstell and Kathryn Hoff–Patrinos, Aviation Financing Problems Under Section 1110 of the Bankruptcy Code, 61 Am.Bankr.L.J. 1 (1987) (Air Vermont "appears to be wrongly decided as a matter of statutory construction and of general Bankruptcy Code policy); Patrick A. Murphy, Creditors' Rights in Bankruptcy, § 6:9 (2nd Ed.2002) (Air Vermont appears to have reached an 'erroneous result' by immunizing the creditor from the avoiding powers); Richard I. Aaron, Bankruptcy Law Funda-

fact, however, that commentators have criticized the plain language of § 1110 is insufficient to alter the plain meaning of a properly enacted statute. *See Negonsott v. Samuels,* 507 U.S. 99, 104, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (stating that "Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive."). The Debtor also urges the Court to adopt the reasoning of the Eighth Circuit in *Armstrong v. State Bank of Towner (In re Gelking),* 754 F.2d 778 (8th Cir.1985), and *Avair, Inc. v. Fairchild Aircraft Corp. (In re Avair, Inc.),* 98 B.R. 261 (Bankr.W.D.Va.1988). The Debtor's reliance on those authorities is misplaced. In the case of *In re Gelking,* 754 F.2d at 779–80, the Eighth Circuit determined that a creditor had properly perfected its security interest in an aircraft prior to the commencement of the debtor's Chapter 7 proceeding. Thus, unlike the instant case, § 1110 was not applicable because the debtor filed under Chapter 7, and § 544 was not applicable because the creditor had a properly perfected security interest in the aircraft. In the case of *In re Avair, Inc.,* 98 B.R. at 262, the bankruptcy court determined that a creditor's unperfected interest in spare aircraft parts was subject to avoidance by a Chapter 11 debtor pursuant to § 544; the court never discussed the application of § 1110.

With Congress's 2000 amendments to § 1110, the reasoning of the Second Circuit in *Air Vermont* is even more pertinent today than in 1985. Nevertheless, the Debtor argues that even if it is required to surrender the aircraft equipment it should retain the ability to pursue avoidance of IAC's security interest. Such an argument is nonsensical for the reasons stated above. Indeed, § 1110 would have no purpose if IAC had the right to repossess aircraft equipment but not the right to liquidate those assets. Accordingly, the Court holds that IAC's status as a conditional vendor under § 1110 entitles IAC to collect on its debt free from the protections afforded the Debtor by § 544 of the Bankruptcy Code because: 1) the express and unambiguous language of § 1110 provides that the right of IAC to pursue its collateral based on its underlying agreement is not limited by Title 11 or by any power of this Court; 2) Congress intended to grant special protection to a limited class of aircraft financiers in drafting § 1110; and 3) Congress amended § 1110 in 2000 in favor of more expansive language.

### C. Repugnant to the Interests of Equity

The Debtor argues that adopting the interpretation of § 1110 urged by IAC would lead to "patently ridiculous conclusions" which Congress could not have possibly intended.[9] The Debtor contended:

mentals, § 10:7 (2002) ("the Second Circuit gave a most questionable interpretation to Bankruptcy Code § 1110 to immunize the secured party from failure to perfect the security interest . . ."); Margaret Sheneman and Cecily A. Dumas, Equipment Leasing—Leveraged Leasing, Practicing Law Institute (2001) ("It is doubtful Congress intended to foster aircraft financing by means of secret unrecorded liens").

Debtor's Objection to Joint Motion for Order to Compel Debtor to Abandon Property Under Section 544 of the Bankruptcy Code and to

Authorize Repossession of Collateral Under Section 1110 of the Bankruptcy Code at 5.

9. The Debtor illustrated the following example of the "patently ridiculous" results:

IAC's view of § 1110 would also lead to indefensible results under this scenario: An insider creditor is owed millions of dollars in unsecured debt by the debtor. The insider knows a bankruptcy filing is imminent, so on the day before the debtor's Chapter 11 case is filed, the insider obtains a lien on

1) no legislative history suggested Congress intended to validate secret liens under § 1110; 2) IAC's interpretation required isolating § 1110 from § 544 and the notion that § 1110 was a "free pass" exempting secret liens was repugnant to the overall purposes of the Bankruptcy Code; 3) Congress only intended § 1110 to be a mechanism for relief from the automatic stay as indicated by its absence from Chapter 7 of the Bankruptcy Code; and 4) allowing IAC to repossess the aircraft equipment created an "irrational distinction" between parties under Chapters 7 and 11 of the Bankruptcy Code.

### 1. The Absence of Legislative History Exempting § 1110 from Lien Avoidance

■■■■ As discussed *supra*, Part II(B), the rules of statutory interpretation dictate that when the language Congress chooses to express its intent is plain the sole function of the Court is to enforce it according to its terms. The Debtor's argument that Congress could not have intended the plain meaning of § 1110 to apply—because there is a notable absence of legislative history exempting unperfected security interests under § 1110 from avoidance under § 544—ignores a basic canon of statutory interpretation, namely, that legislative history is primarily used to show that Congress intended a meaning different from the words it chose. *GTE Sylvania, Inc.,* 447 U.S. at 108, 100 S.Ct. 2051. Contrary to the Debtor's assertion, the absence of any contrary legislative history is an affirmation that Congress meant

what it said. *See Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 592, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) (stating that courts generally "cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark."). *Cf. Chisom v. Roemer,* 501 U.S. 380, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991) (construing the Voting Rights Act of 1965, in part, on the basis that if Congress had intended a particular interpretation it would have come to light in the legislative history). Furthermore, Congress obviously knew what it was doing when it gave special protection to aircraft financiers. In each of the amendments in 1978, 1994, and 2000, Congress broadened the scope and applicability of § 1110. The interpretation of § 1110 urged by IAC, and reached by this Court, is not one of those rare situations where an amendment creates a dramatic change in long-standing law such that common sense would dictate that Congress obviously did not mean what it said. *See Aetna Casualty & Surety Co. v. Clerk, United States Bankruptcy Court, New York, N.Y. (In re Chateaugay Corporation),* 89 F.3d 942, 954 (2nd Cir.1996) (stating that "no canon of construction bars courts from using common sense and construing a law as not saying what it obviously does not mean."). Thus, in light of a long-standing trend by Congress to broaden the protections afforded to aircraft financiers, this Court is unwilling to interpret the absence of legislative discussion as an indication that Congress did not mean what it said when it drafted § 1110 in such a way as to immunize aircraft financiers from lien avoidance under § 544 of the Bankruptcy Code.

all of the debtor's aircraft parts to secure the insider's claim. The insider creditor doesn't bother to perfect the lien on the aircraft parts. On these facts, IAC would have the Court validate the insider creditor's unperfected and preferential lien under § 1110; in IAC's view, § 1110 would act as an impenetrable shield to the estate's

preference action under § 547 and the estate's lien avoidance action under § 544. Objection of Vanguard Airlines, Inc. to Joint Motion for Order to Compel Debtor to Abandon Property Under Section 544 of the Bankruptcy Code and to Authorize Repossession of Collateral Under Section 110 of the Bankruptcy Code at 6–7.

### 2. Exemption of Secret Liens as Contrary to the Bankruptcy Code

Secret and unperfected liens are avoidable under § 544 of the Bankruptcy Code. 11 U.S.C. § 544(a). The Court's ruling today exempts unperfected security interests under § 1110 from the general provisions of § 544. Apart from the plain language of the statute, as discussed *supra*, Part II(B), the Court notes that the unperfected liens of aircraft financiers are not the only specific class of creditors to enjoy the enforceability of their liens despite the avoiding powers under § 544. For example, under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499a *et seq.*, a "trust" is imposed on commodities and sales proceeds to benefit unpaid suppliers, sellers or agents. 7 U.S.C. § 499e(c) (stating that financing arrangements in perishable agricultural commodities are a burden on commerce and contrary to the public interest). The beneficiary of the trust is entitled to priority ahead of all other creditors and even defeats claims of trustees to administrative costs and expenses. *In re Super Spud, Inc.*, 77 B.R. 930, 932 (Bankr. M.D.Fla.1987) (stating that the corpus of a secured PACA trust is not to be considered property of the debtor's estate.). Indeed, Congress has the power to make bankruptcy laws in any manner it sees fit, and has the power to affect vested rights of many kinds. U.S. Const. art. I, § 8 cl. 4, 18; *In re Grand Rapids R. Co.*, 28 F.Supp. 802, 803 (W.D.Mich.1939). Thus, § 1110 is not the only instance where Congress has acted to grant a specific class of creditors extraordinary remedies in bankruptcy. The fact that Congress carved out a limited exception granting preferential treatment to aircraft financiers—as it did for suppliers, sellers, and agents of agricultural commodities—is not repugnant to the overall purposes of the Bankruptcy Code considering Congress's plenary powers and the fact that § 1110 protections are only available to a narrow class of aircraft financiers.

### 3. A Mechanism for Relief from the Automatic Stay

The Debtor asserts that § 1110 is essentially a stay relief mechanism designed to encourage aircraft financing by allowing aircraft financiers quick access to their collateral, and that it may not be used to validate an unperfected, secret lien. The Debtor argues that Congress made this intent ascertainable by referencing the financier's power to have "immediate access to collateral" and by not inserting a similar provision in Chapter 7 of the Bankruptcy Code. As the Debtor correctly states, Chapter 11 reorganization proceedings often involve disputes over a creditor's right to repossess collateral that are not present in a Chapter 7 proceeding. The fatal flaw in the Debtor's argument, however, is that it ignores Congress's amendment of § 1110 in 2000. As noted *supra*, Part II(B), Congress in 2000 specifically deleted references in § 1110 that provided that the power of a creditor to repossess was not limited by § 362. Instead, Congress chose the all-inclusive language "any other provision of this title." Had Congress intended § 1110 to merely be a mechanism for relief from the automatic stay of § 362, it would not have deleted the specific reference to § 362 and broadened the statutory language to apply to the entire title. The mere fact that Congress distinguishes between Chapter 7 and Chapter 11 debtors does not compel the conclusion that Congress intended a meaning contrary to the plain language of § 1110.

### 4. "Irrational Distinction" Between Chapters 7 and 11

The Committee argues that allowing unperfected creditors in a liquidat-

ing Chapter 11 proceeding to repossess aircraft equipment—while such unperfected interests are avoidable in a Chapter 7 proceeding—creates an "irrational distinction." U.S. Const. amend. V. *See generally Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (stating that "Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' "). Bankruptcy legislation falls within the arena of economics and social welfare. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Social and economic measures run afoul of constitutional protections when the legislature's actions are irrational. *MSM Farms, Inc. v. Spire,* 927 F.2d 330, 332 (8th Cir.1991). "A statute is presumed constitutional ... and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' " *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

A Chapter 11 liquidation is specifically authorized by the Bankruptcy Code. 11 U.S.C. § 1129(a)(11). The Ninth Circuit Bankruptcy Appellate Panel illustrated how a liquidating plan fits within a Chapter intended for the reorganization of businesses, and distinguished a Chapter 11 liquidation proceeding from one under Chapter 7:

> [A] debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized from a forced sale. The Bankruptcy Code recognizes this in § 1129(a)(11), by providing that liquidation may be contemplated in a valid chapter 11 plan of reorganization, despite the label "reor-

ganization." Although the word "reorganization" might commonly bring to mind ongoing operations, Congress explicitly placed language providing for liquidation within chapter 11, which is titled "Reorganization." Had Congress not intended to include liquidation as an acceptable type of reorganization plan, then presumably all provisions dealing with liquidation would fall within chapter 7, which is specifically titled "Liquidation." We must therefore assume Congress placed this provision in chapter 11 intentionally. Liquidation under a chapter 11 plan is not the same as a chapter 7 liquidation. A liquidation under chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a chapter 7 trustee, who is generally less familiar with the debtor's assets. A chapter 11 plan, even though a liquidating plan, must still conform to the same statutory requirements of any other chapter 11 reorganization. A liquidating plan is desirable when the debtor in possession can bring about a greater recovery for the creditors than would a straight liquidation under chapter 7.

*In re Deer Park, Inc.,* 136 B.R. 815, 818 (9th Cir. BAP 1992), *aff'd,* 10 F.3d 1478 (9th Cir.1993).

As explained by the court in *Deer Park, Inc.,* a significant distinction exists between a Chapter 7 liquidation and a liquidating Chapter 11 proceeding. The fact that a debtor in possession may elect to hold aircraft equipment for a considerable length of time before disposing of the assets is a rational basis for Congress to imbue aircraft financiers with the protection of immediate repossession under

§ 1110 in a liquidating Chapter 11 proceeding, but not impose those same creditor protections in a Chapter 7 proceeding.[10]

Accordingly, the Court finds that allowing a creditor to repossess aircraft equipment pursuant to an unperfected security interest under § 1110 is not repugnant to the interests of equity because: 1) Congress intentionally gave special protection to aircraft financiers; 2) Congress has plenary power to create uniform bankruptcy laws and has carved out other exceptions for limited classes of creditors from the avoiding powers under § 544; 3) Congress intended for § 1110 to be more than a mechanism for relief from the automatic stay by stating the powers granted in § 1110 were not affected by any other provision of Title 11; and 4) Congress had a rational basis for treating § 1110 creditors differently in liquidating Chapter 11 proceedings from a Chapter 7 proceeding because of the fundamental underlying distinctions between the two chapters.

## III. ORDER

Therefore, for the reasons stated above, it is

**ORDERED** that the Joint Motion of IAC and GMAC be and hereby is GRANTED, and IAC and GMAC are entitled to repossess the Debtor's equipment as defined by 11 U.S.C. § 1110(a)(3), pursuant to the underlying agreement, and the rights of IAC and GMAC to sell, lease, or otherwise retain or dispose of such equipment are not limited or otherwise affected by any other provision of this title or by any power of the court. The Debtor's objection to IAC's and GMAC's Proof of Claim and the Debtor's counterclaim for avoidance of IAC's security interest in Adversary Proceeding No. 03–04021 are DENIED.

---

**10.** The Court does not find it necessary to address the argument of why a § 1110 creditor is immune from the avoidance of an unperfected security interest in a liquidating Chapter 11 but not in a Chapter 7 proceeding. The Court only notes that a liquidating Chapter 11 proceeding is significantly different from Chapter 7 and those differences provide Congress a rational basis to treat the debtor and creditor relationship differently. *See generally Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959) (finding the fact that "a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy.").